No. 14-10688

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

---

FRANCISCO MARTIN,

*Plaintiff-Appellant,*

– v. –

ONE BRONZE ROD, ONE CHEST, including its contents and associated artifacts, ONE CHEST, including its contents and associated artifacts, ONE CHEST, including its contents and associated artifacts,

*Defendants-Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, NO.8:12-CV-00656-JSM-EAJ
(HONORABLE JAMES S. MOODY)

## **APPENDIX**

JOHN D. KIMBALL
BLANK ROME, LLP
*Attorneys for Plaintiff-Appellant*
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

# <u>INDEX OF APPENDIX</u>

<u>Tab #</u>                                                                                                    <u>Page #</u>

TAB A – District Court Docket Sheet ......................................................... A1

TAB 5 – Verified Amended Complaint in Admirality *In Rem*
       filed April 13, 2012 .............................................................................. A6

TAB 8 – Order, filed April 13, 2012 ....................................................... A40

TAB 10 – Order, filed April 30, 2012 ..................................................... A41

TAB 12 – Order, filed May 1, 2012 ........................................................ A48

TAB 17 – Order, filed May 18, 2012 ....................................................... A50

TAB 29 – Order, filed January 28, 2013 .................................................. A54

TAB 30 – Notice of Interlocutory Appeal, filed February 12, 2013 ......... A56

TAB 33 – Order of Dismissal, filed August 13, 2013 .............................. A59

TAB 36 – Order, filed August 29, 2013 ................................................... A64

TAB 38 – Order, filed October 11, 2013 .................................................. A65

TAB 40 – Report and Recommendations, filed January 14, 2014 ............ A68

TAB 42 – Order, filed January 30, 2014 .................................................. A75

TAB 43 – Final Judgment, entered February 11, 2014 ............................ A77

TAB 44 – Notice of Appeal, dated February 19, 2014 ............................. A79

TAB CS – Certificate of Service

**TAB A**

APPEAL, CLOSED, SL DOC

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:12-cv-00656-JSM-EAJ

Martin v. One Bronze Rod et al
Assigned to: Judge James S. Moody, Jr
Referred to: Magistrate Judge Elizabeth A. Jenkins
Case in other court: 11th Circuit, 13-10694-F
                              11th Circuit, 14-10688-F
Cause: 46:31301 Commercial Instruments and
Maritime Liens

Date Filed: 03/28/2012
Date Terminated: 02/13/2014
Jury Demand: None
Nature of Suit: 340 Marine
Jurisdiction: Federal Question

**Plaintiff**

**Francisco Martin**                    represented by    **Jeremy A. Herschaft**
Blank Rome, LLP
405 Lexington Ave
New York, NY 10174-0208
917-332-3048
Email:
jherschaft@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D. Kimball**
Blank Rome, LLP
405 Lexington Ave
New York, NY 10174-0208
212/885-5259
Fax: 917/981-2106
Email: jkimball@blankrome.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael A. Rodriguez**
Blank Rome, LLP
Suite 312
1200 N Federal Hwy
Boca Raton, FL 33432
561/417-8131

A1

Case: 14-10688    Date Filed: 04/07/2014    Page: 5 of 104

Fax: 561/417-8198
Email:
mrodriguez@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas H. Belknap , Jr.**
Blank Rome, LLP
405 Lexington Ave
New York, NY 10174-0208
917/332-3048
Email: tbelknap@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.
**Defendant**
**One Bronze Rod**

**Defendant**
**One Chest**
*including its contents and*
*associated artifacts*

**Defendant**
**One Chest**
*including its contenets and*
*associated artifacts*

**Defendant**
**One Chest**
*including its contenets and*
*associated artifacts*

**Custodian**
**Francisco Martin**                represented by **John D. Kimball**
Blank Rome, LLP
405 Lexington Ave
New York, NY 10174-0208
212/943-3980
Fax: 917/981-2106
Email: jkimball@blankrome.com

A2

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/28/2012 | | Sealed document S-1. (EJC) (Entered: 04/30/2012) |
| 03/28/2012 | 2 | MOTION to seal document S-1 Sealed document by Francisco Martin. (Originally filed under seal at S-2.) (EJC) (Entered: 04/30/2012) |
| 03/28/2012 | 3 | MOTION for issuance of warrant in rem by Francisco Martin. (Originally filed under seal at S-3.)(EJC) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Entered: 04/30/2012) |
| 03/30/2012 | 4 | ORDER ruling deferred 2 Motion to Seal Document 2 MOTION to seal document Sealed document. Signed by Magistrate Judge Elizabeth A. Jenkins on 3/30/2012. (Originally filed under seal at S-4.) (EJC) (Entered: 04/30/2012) |
| 04/03/2012 | | Mail returned as Undeliverable re: Copies mailed to Francisco Martin as to 4 Order. (EJC) (Entered: 04/30/2012) |
| 04/13/2012 | 5 | AMENDED COMPLAINT against One Bronze Rod, One Chest (including its contenets and associated artifacts), One Chest (including its contents and associated artifacts), One Chest (including its contents and associated artifacts) filed by Francisco Martin.(Originally filed under seal at S-5.) (EJC) (Entered: 04/30/2012) |
| 04/13/2012 | | Sealed document S-5. (EJC) (Entered: 04/30/2012) |
| 04/13/2012 | 6 | AMENDED MOTION for issuance of warrant in rem by Francisco Martin. (EJC) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Originally filed under seal at S-6.) (EJC). (Entered: 04/30/2012) |
| 04/13/2012 | 7 | MOTION to appoint substitute custodian by Francisco Martin. (EJC) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Originally filed under seal at S-7.) (EJC). (Entered: 04/30/2012) |
| 04/13/2012 | 8 | ORDER directing Clerk to temporarily take custody of one bronze rod filed as an attachment to the complaint. This Order is not authorizing the arrest of TXI and does not signify that the court finds in rem jurisdiction. Those issues are under advisement. |

A3

| | | (Originally filed under seal at S-8.) Signed by Magistrate Judge Elizabeth A. Jenkins on 4/13/2012. (EJC) (Entered: 04/30/2012) |
|---|---|---|
| 04/30/2012 | 9 | ORDER directing Clerk to UNSEAL the following documents in this case: [S-2], [S-3]; [S-4]; [S-5] (except for Exhibit 1 which shall remain sealed); [S-6]; [S-7]; and [S-8]. Only [S-1] and Exhibit 1 to [S-5] shall remain sealed. Signed by Magistrate Judge Elizabeth A. Jenkins on 4/30/2012. (EJC) (Entered: 04/30/2012) |
| 04/30/2012 | 10 | ORDER denying as moot 3 Motion for issuance of warrant in rem; granting in part and denying in part 6 Motion for issuance of warrant in rem. Signed by Magistrate Judge Elizabeth A. Jenkins on 4/30/2012. (LAK) (Entered: 04/30/2012) |
| 05/01/2012 | 11 | ORDER granting in part and denying in part 2 Motion to Seal Document. Signed by Magistrate Judge Elizabeth A. Jenkins on 5/1/2012. (LAK) (Entered: 05/01/2012) |
| 05/01/2012 | 12 | ORDER granting in part and denying in part 7 Motion to appoint custodian. Francisco Martin is appointed Substitute Custodian of Defendant One Bronze Rod. Plaintiff shall file with the court a proper consent and indemnification agreement prior to the U.S. Marshal executing the warrant of arrest for Defendant One Bronze Rod. See ORDER for details. Signed by Magistrate Judge Elizabeth A. Jenkins on 5/1/2012. (LAK) (Entered: 05/01/2012) |
| 05/07/2012 | 13 | CONSENT and indemnification agreement for appointment of substitute custodian. (DMS) (Entered: 05/07/2012) |
| 05/11/2012 | 15 | MOTION for reconsideration re 10 Order on motion for issuance of warrant in rem by Francisco Martin. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Exhibit B)(EJC) (Entered: 05/11/2012) |
| 05/14/2012 | 16 | WARRANT to arrest property returned (EJC) (Entered: 05/15/2012) |
| 05/18/2012 | 17 | ORDER denying 15 Motion for reconsideration. Signed by Magistrate Judge Elizabeth A. Jenkins on 5/18/2012. (LAK) (Entered: 05/18/2012) |
| 05/31/2012 | 18 | OBJECTION re 17 Order on motion for reconsideration by Francisco Martin. (EJC) (Entered: 05/31/2012) |
| 06/04/2012 | 19 | PROOF OF PUBLICATION filed by Francisco Martin. Newspaper: Charlotte Sun, Englewood Sun, and North Port Sun. Date(s) of publication 5/28/12. (EJC) (Entered: 06/04/2012) |

A4

Case: 14-10688    Date Filed: 04/07/2014    Page: 8 of 104

| 10/01/2012 | 20 | NOTICE of designation under Local Rule 3.05 - track 2 issued by Deputy Clerk on 10/1/2012. (SMB) (Entered: 10/01/2012) |
| 10/19/2012 | 21 | MOTION for John D. Kimball to appear pro hac vice by Francisco Martin. (Attachments: # 1 Exhibit)(BSN) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Entered: 10/22/2012) |
| 10/19/2012 | 22 | MOTION for Thomas H. Belknap, Jr. to appear pro hac vice by Francisco Martin. (Attachments: # 1 Exhibit)(BSN) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Entered: 10/22/2012) |
| 10/19/2012 | 23 | MOTION for Jeremy A. Herschaft to appear pro hac vice by Francisco Martin. (Attachments: # 1 Exhibit)(BSN) Motions referred to Magistrate Judge Elizabeth A. Jenkins. (Entered: 10/22/2012) |
| 10/19/2012 | 25 | NOTICE of Appearance by Michael A. Rodriguez on behalf of Francisco Martin (JNB) (Entered: 10/22/2012) |
| 10/22/2012 | 24 | NOTICE of Appearance by Michael A. Rodriguez on behalf of Francisco Martin (Rodriguez, Michael) (Entered: 10/22/2012) |
| 10/22/2012 |  | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Thomas H. Belknap appearing on behalf of Francisco Martin (Filing fee $10 receipt number TPA13921.) (JNB) (Entered: 10/22/2012) |
| 10/22/2012 |  | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney John D. Kimball appearing on behalf of Francisco Martin (Filing fee $10 receipt number TPA13921.) (JNB) (Entered: 10/22/2012) |
| 10/22/2012 |  | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Jeremy A. Herschaft appearing on behalf of Francisco Martin (Filing fee $10 receipt number TPA13921.) (JNB) (Entered: 10/22/2012) |
| 10/23/2012 | 26 | ENDORSED ORDER granting 22 motion to appear pro hac vice; granting 23 motion to appear pro hac vice; granting 21 motion to appear pro hac vice. Signed by Judge James S. Moody, Jr on 10/23/2012. (JG) (Entered: 10/23/2012) |
| 12/18/2012 | 27 | ORDER: Plaintiff shall file a Status Report within 11 days. Signed by Judge James S. Moody, Jr on 12/18/2012. (LN) (Entered: 12/18/2012) |
| 12/21/2012 | 28 | STATUS REPORT *as Directed by the Court's Order of December* |

A5

| | | |
|---|---|---|
| | | *18, 2012* by Francisco Martin. (Kimball, John) (Entered: 12/21/2012) |
| 01/28/2013 | 29 | ORDER: Plaintiff's Objections 18 are OVERRULED and the Magistrate Judge's Order 17 is AFFIRMED. Signed by Judge James S. Moody, Jr on 1/28/2013. (LN) (Entered: 01/28/2013) |
| 02/12/2013 | 30 | NOTICE OF INTERLOCUTORY APPEAL as to 29 Order, 10 Order on Motion for Issuance of Warrant in rem, 17 Order on Motion for Reconsideration by Francisco Martin. Filing fee not paid. (Kimball, John) (Entered: 02/12/2013) |
| 02/13/2013 | | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 30 Notice of Interlocutory Appeal. (EJC) (Entered: 02/13/2013) |
| 02/14/2013 | | USCA appeal fees received $ 455 receipt number tpa15841 re 30 Notice of Interlocutory Appeal filed by Francisco Martin (ARC) (Entered: 02/14/2013) |
| 02/15/2013 | | TRANSMITTAL to USCA forwarding appeal fees received $455 receipt number TPA-15841 re 30 Notice of Interlocutory Appeal. (EJC) (Entered: 02/15/2013) |
| 02/19/2013 | 31 | TRANSCRIPT information form filed by Francisco Martin re 30 Notice of Interlocutory Appeal. (Kimball, John) (Entered: 02/19/2013) |
| 04/01/2013 | 32 | CERTIFICATE of readiness sent to USCA re: 30 Notice of Interlocutory Appeal. ROA consists of: volume of pleadings: 2 (1 Public / 1 Sealed). USCA number: 13-10694-FF. (EJC) (Entered: 04/01/2013) |
| 04/01/2013 | | RECORD on appeal sent to USCA re 30 Notice of Interlocutory Appeal. Transmittal includes copy of docket sheet, volume of pleadings: 2 (1 Public / 1 Sealed). USCA number 13-10694-FF. (EJC) (Entered: 04/01/2013) |
| 08/13/2013 | 33 | ORDER of USCA: On its own motion, the court DISMISSES the appeal for lack of jurisdiction as to 30 Notice of Interlocutory Appeal filed by Francisco Martin. EOD: 8/13/13; USCA number: 13-10694. (JNB) (Entered: 08/13/2013) |
| 08/19/2013 | 34 | ORDER: Plaintiff shall file a Status Report within 11 days. Signed by Judge James S. Moody, Jr on 8/19/2013. (LN) (Entered: 08/19/2013) |

A5.1

| 08/28/2013 | 35 | STATUS report by Francisco Martin as to One Chest(including its contenets and associated artifacts), One Chest(including its contents and associated artifacts), One Bronze Rod. (Kimball, John) (Entered: 08/28/2013) |
|---|---|---|
| 08/29/2013 | 36 | ORDER: The Clerk is directed to ADMINISTRATIVELY CLOSE this case without prejudice to Plaintiff to move to reopen the case if he receives a favourable ruling from the Eleventh Circuit. Any pending motions are terminated as moot. Signed by Judge James S. Moody, Jr on 8/29/2013. (LN) (Entered: 08/29/2013) |
| 10/10/2013 | 37 | MOTION to Reopen Case by Francisco Martin. (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C)(Kimball, John) (Entered: 10/10/2013) |
| 10/11/2013 | 38 | ORDER: Plaintiff's Motion to Reopen Case 37 is granted solely for the purpose of allowing Plaintiff to seek further action as to Defendant TX 1; the motion is otherwise denied. The Clerk is directed to reopen this case. Plaintiff shall file the appropriate motion to seek a salvage or forfeiture award with respect to Defendant TX 1 within 14 days. Signed by Judge James S. Moody, Jr on 10/11/2013. (LN) (Entered: 10/11/2013) |
| 10/25/2013 | 39 | MOTION for judgment on the pleadings *and Supporting Memorandum* by Francisco Martin. (Attachments: # 1 Appendix A) (Kimball, John) (Entered: 10/25/2013) |
| 01/14/2014 | 40 | REPORT AND RECOMMENDATIONS re 39 MOTION for judgment on the pleadings and Supporting Memorandum. Signed by Magistrate Judge Elizabeth A. Jenkins on 1/14/2014. (KMG) (Entered: 01/14/2014) |
| 01/28/2014 | 41 | OBJECTION re 40 REPORT AND RECOMMENDATIONS re 39 MOTION for judgment on the pleadings *and Supporting Memorandum* filed by Francisco Martin. *Objections to Magistrate's Report and Recommendations (Dkt.. 40).* (Kimball, John) (Entered: 01/28/2014) |
| 01/30/2014 | 42 | ORDER adopting 40 Report and Recommendations. Plaintiff's Motion for Judgment on the Pleadings (Dkt. #39) is GRANTED in part and DENIED in part. (See Order for details.) Plaintiff shall file a proposed final judgment consistent with the Court's ruling herein within fourteen (14) days of this Order. Signed by Judge James S. Moody, Jr on 1/30/2014. (LN) (Entered: 01/30/2014) |
| 02/11/2014 | 43 | FINAL JUDGMENT: Plaintiff shall be, and hereby is, granted full |

A5.2

| | | |
|---|---|---|
| | | title in Defendant TX 1 as its salvage award in respect of that property; and Plaintiff's Amended Complaint shall be, and hereby is, in all other respects dismissed without costs to any party; and Document S-1 and Exhibit 1 to Document S-5 filed in this matter under seal and maintained under seal pursuant to the Court's April 14, 2012 Order (Dkt #9) shall remain under seal; and the Clerk shall immediately turn over to Plaintiff any portion of Defendant TX 1 still in the Court's custody; and the Clerk is hereby directed to mark this case as closed. Signed by Judge James S. Moody, Jr on 2/11/2014. (LN) (Entered: 02/11/2014) |
| 02/19/2014 | 44 | NOTICE OF APPEAL as to 43 Order by Francisco Martin. Filing fee not paid. (Kimball, John) (Entered: 02/19/2014) |
| 02/20/2014 | 45 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 44 Notice of appeal. (EJC) (Entered: 02/20/2014) |
| 02/20/2014 | | USCA appeal fees received $ 505 receipt number tpa21991 re 44 Notice of appeal filed by Francisco Martin (ARC) (Entered: 02/20/2014) |
| 02/21/2014 | | TRANSMITTAL to USCA forwarding appeal fees received $505.00, receipt number tpa21991 re 44 Notice of appeal. (EJC) (Entered: 02/21/2014) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/04/2014 10:19:05 | | |
| **PACER Login:** | tg0004 | **Client Code:** | 139797-00601 |
| **Description:** | Docket Report | **Search Criteria:** | 8:12-cv-00656-JSM-EAJ |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

A5.3

**TAB 5**



FILED

12 APR 13   AM11:03

TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**"IN ADMIRALTY"**

FRANCISCO MARTIN,

Plaintiff,                                    CIVIL ACTION

                                             CASE NO.: 8:12-CV-656-T-30EAJ

           v.

One Bronze Rod,
One Chest (including
its contents and associated artifacts),
One Chest (including
its contents and associated artifacts) and
One Chest (including its contents and
associated artifacts),

Defendants *in rem*.

### VERIFIED AMENDED COMPLAINT IN ADMIRALTY *IN REM*

1.     The Plaintiff, Francisco Martin (hereinafter Mr. Martin) hereby asserts the following

Complaint *in rem* against the Defendants One Bronze Rod (hereinafter Defendant TX 1);

One Chest, including its contents and associated artifacts (hereinafter Defendant TX 3(1));

One Chest, including its contents and associated artifacts (hereinafter Defendant TX 3(2))

and One Chest, including its contents and associated artifacts (hereinafter Defendant TX

3(3)). Mr. Martin has named One Bronze Rod,  One Chest (including its contents and

associated artifacts), One Chest (including its contents and associated artifacts), and One

Page 1 of 35

S-5

A6

Chest (including its contents and associated artifacts) as separate defendants in order to facilitate this Court's identification of their different locations and contents. On information and belief, Mr. Martin alleges that the Defendants represent portions of the same cargo that belonged to a piratical vessel and that later was divided and concealed by pirates operating such vessel.

## PARTIES

2.      Mr. Martin is a U.S. citizen residing in Tampa, Florida.  He is the owner and commander of a merchant vessel.  He also is the former Ariel F. Sallows Professor of Human Rights at the University of Saskatchewan College of Law and has taught U.S. constitutional law and international law at the University of Miami School of Law and St. Thomas University School of Law.  He the president of Rights International, The Center for International Human Rights Law, Inc., which is a not-for-profit organization devoted to providing legal representation to victims of human rights violations before international courts.  He has authored nine books and numerous law review articles, including *International Human Rights and Humanitarian Law* (Cambridge Univ. Press 2006) and *The Constitution as Treaty* (Cambridge Univ. Press 2007).  Mr. Martin brings this action in his personal capacity.

3.      Defendant TX 1 consists of a bronze rod (consisting of three pieces) that was seized and/or captured by Mr. Martin in the Peace River basin in Desoto County within a circular area having a radius of 3 statute miles whose center point is at coordinates 27° 06' 13.70"

N latitude and 81° 59' 01.12" W longitude [at an exact location provided in the attached Exhibit No. 1 to the Court under seal]. Upon the filing of his original Verified Complaint, Mr. Martin gave the Clerk of this Court a 3-1/2 inch segment of Defendant TX 1.

4.      On information and belief, Mr. Martin alleges that Defendants TX 3(1) consists of one copper chest and gold and/or silver items in the Peace River basin in Desoto County within a circular area having a radius of 3 statute miles whose center point is at coordinates 27° 06' 13.70" N latitude and 81° 59' 01.12" W longitude [at an exact location provided in the attached Exhibit No. 1 to the Court under seal].

5.      On information and belief, Mr. Martin alleges that Defendant TX 3(2) consists of one copper chest and gold and/or silver items in the Peace River basin in Desoto County within a circular area having a radius of 3 statute miles whose center point is at coordinates 27° 06' 13.70" N latitude and 81° 59' 01.12" W longitude [at an exact location provided in the attached Exhibit No. 1 to the Court under seal].

6.      On information and belief, Mr. Martin alleges that Defendant TX 3(3) consists of one copper chest and gold and/or silver items in the Peace River basin in Desoto County within a circular area having a radius of 3 statute miles whose center point is at coordinates 27° 06' 13.70" N latitude and 81° 59' 01.12" W longitude [at an exact location provided in the attached Exhibit No. 1 to the Court under seal].

Page 3 of 35

A8

## JURISDICTION AND VENUE

7.     This is a case of admiralty and maritime jurisdiction stating a maritime claim within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rules C (*in rem* action), D (action for possession and title), and/or G (forfeiture action *in rem*), as hereinafter more fully appears. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1333 (admiralty and maritime jurisdiction), and 46 U.S.C. § 30101 (the Admiralty Extension Act) in that Mr. Martin's claims respectively arise under 33 U.S.C. §§ 383, 384, and 385 (Regulations for the Suppression of Piracy); the *International Convention on Salvage*; 28 U.S.C. § 2201(a) (the Declaratory Act); 18 U.S.C. 2242 (prohibition of attempting to interfere and/or interference with search and seizure of property subject to civil forfeiture), and the general maritime law of nations governing salvage, piratical forfeitures, finds, and maritime contracts.

8.     Finally, this Court has *in rem* jurisdiction under 28 U.S.C. § 1355(b)(1)(A) because pertinent acts or omissions giving rise to the forfeiture occurred in the Middle District of Florida.

9.     Furthermore, this Court has *in rem* jurisdiction under 28 U.S.C. § 1355(b)(1)(B) because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

10.     This Court also has *in rem* jurisdiction in that the Defendants are located within the district.

11.     This Court also has constructive *in rem* jurisdiction over the Defendants in that Mr.
Martin has transferred a segment of Defendant TX 1 to the custody this Court as symbolic
arrest of the remaining portions of Defendants TX 1 and 3(1)-(3).

12.     In addition, this Court has *in personam* jurisdiction over Mr. Martin by virtue of his
contacts with this forum.

13.     Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28
U.S.C. §§ 1391 and 1395 on the respective bases of the Defendants' previous and present
respective locations in Hillsborough County and DeSoto County where the Defendants were
found, arrested, and/or brought into.

## FACTS

14.     Mr. Martin has conducted extensive legal, academic and field research beginning in
2003.  This research was conducted at the Library of Congress, public and university
libraries, law libraries, on the internet, on and about the Peace River, and by interviews of
persons located in Broward, Dade, Charlotte, and DeSoto counties.

15.     On information and belief, Mr. Martin alleges that the Defendants were property
taken piratically by, the proceeds from such property taken piratically by, and/or property
belonging to pirates [hereinafter the Gasparilla Pirates, also known as the Turtle Bay
Pirates] operating a vessel(s) fitted out in whole or in part, or held for the purpose of being
employed in the commission of piratical aggression, search, restraint, depredation, or
seizure, or in the commission of any other act of piracy, as defined and prohibited by the

laws of the United States (including 18 U.S.C. §§ 1651 (high seas pirates), 1652 (U.S. citizens as pirates), 1653 (alien pirates), 1656 (conversion or surrender of vessel to pirates), 1657 (corruption of seamen and confederating with pirates), 1659 (attack to plunder vessel), 1660 (receipt of pirate property), and 1661 (robbery ashore)) and/or by the law of nations.

16.    If this Court determines that the Defendants do not represent cargo of a piratical nature, Mr. Martin, in the alternative, alleges on information and belief that the Defendants still represent cargo.

17.    On information and belief, Mr. Martin alleges that the Gasparilla Pirates included the following persons:

- Gasparilla (also known as Jose Gaspar and "Richard Coeur de Lion"), who was the Gasparilla Pirates' commander and was hanged in Cuba;

- Jean Laffite, who later became second-in-command after Gasparilla's brother's death and was buried at sea in the Gulf of Honduras on February 5, 1823;

- Juan Gomes D'Sa (also known as "John Gomas," "Panther Key John," and "Juan Gomez"), who was buried on Dismal Key, Florida in 1900;

- Juan Gonzalez (who resided at Shell Creek, Florida), who is buried at Shell Creek, Florida;

- Gallagher (also known as "Bell"), who is buried in Pensacola, Florida;

- and other unnamed persons, including a pirate that resided near the Peace River,

Page 6 of 35

Florida.

18.     On information and belief, Mr. Martin alleges that Juan Gomes D'Sa and Juan Gonzalez, and an unnamed pirate residing near the Peace River admitted to friends and members of the public that they respectfully had been pirates.

19.     On information and belief, Mr. Martin alleges that the Defendants were taken unlawfully from unknown persons, including U.S. citizens, and/or merchant vessels, including those owned in whole or in part by U.S. citizen(s), sometime during the early 1800s on the territorial waters of the United States and/or the high seas of the Atlantic Ocean, Caribbean, and/or Gulf of Mexico by the Gasparilla Pirates operating out of the Charlotte Harbor and/or other areas in Florida (including Tampa Bay), Cuba (including Cape Antonio), and/or Louisiana (including Barataria Bay).

20.     On information and belief, Mr. Martin alleges that corroborating his allegation that the Gasparilla Pirates were operating out of Port Charlotte Harbor is a report by Captain Horatio Dexter to Florida territorial governor William Duval in 1823. Governor Duval dispatched Captain Horatio Dexter to Charlotte Harbor in 1823. On August 20, 1823, Captain Dexter reported to Gov. Duval that Indians had told him that heavily armed, runaway slaves and former Havana residents lived on the barrier islands of Charlotte Harbor. [One of these islands was called "Gasparilla Island."] These persons were supplied with food and munitions by white men who commanded vessels that mounted one to three

Page 7 of 35

A12

cannons each. These persons also carried off refugee slaves from Florida territory. Capt. Dexter concluded that these persons likely were pirates and recommended that the U.S. Navy's West Indies Squadron based at Key West investigate.

21.     On information and belief, Mr. Martin alleges that corroborating Jean Laffite's membership in the Gasparilla Pirates is the coded directions to Laffite's bases of piratical operations at Barataria Bay and Timbalier Bay in Louisiana that were engraved on a pewter plate discovered at Shell Creek, Florida (the location of Juan Gonzalez' residence). A copy (Figure 1) of a pencil rubbing of the pewter plate code follows:



22.    **Figure 1**

Mr. Martin deciphered the code's text as follows:

> The text "N --------->" means steer north. The masonic compass and square
> symbol provides two keys for deciphering the rest of the code. The
> compass' arc is set at 45 degrees. The square represents 90 degrees. The
> "1/4" on the code represents 1/4 of a compass' 360 degrees, which equals
> 90 degrees. "L" represents the word "longitude," and "22" represent "22
> minutes." The four dots (". . . .") represent four *puntos* (the Spanish word

A13

for "points"). The four *puntos* represent a Spanish pun for another meaning of the word *puntos*, namely the points on a compass. Four points on a compass equals 45 degrees, which also is represented by the masonic compass' arc measurement. The four *puntos* also appear to represent the four barrier islands of Barataria Bay. The back slash ("\") represents the Barataria Pass' channel that runs along a northwest-southeast line into Barataria Bay. To summarize, the code's text can be paraphrased as follows: Steer north to intercept longitude 90 degrees 22 minutes at Timbalier Bay, and then steer 45 degrees along the four barrier islands of Barataria Bay (" . . . .") to the Barataria Pass approach into Barataria Bay.

23.    On information and belief, Mr. Martin alleges that the Gasparilla Pirates captured the vessel *Peacock* in 1818. The Gasparilla Pirates captured Gallagher (also known as Bell) on the *Peacock*. Gallagher later joined the Gasparilla Pirates as a crew member. Gallagher was a member of the Gasparilla Pirates from 1818 to 1824.

24.    On information and belief, Mr. Martin alleges that Richard Coeur de Lion commanding the vessel *Jupiter* captured the U.S. merchant vessel *Orleans*, its cargo worth $60,000.00, and a U.S. naval officer on August 19, 1821 near Abaco, The Bahamas.

25.    On information and belief, Mr. Martin alleges that the Gasparilla Pirates (including Jean Laffite) captured the U.S. merchant vessel *Jay* and an unnamed British sloop on or about April 11, 1822 in Old Bahama Channel near Cuba. Lafitte and members of his crew were captured by Spanish authorities in Gibara, Cuba; however, they later escaped.

26.    On information and belief, Mr. Martin alleges that the Gasparilla Pirates repeatedly fled capture by governmental authorities.

27.    On information and belief, Mr. Martin alleges that the Gasparilla Pirates either in

concert or independently later concealed the Defendants in the tidal waters and land of the

Peace River basin (which informally represented the western boundary of the Seminole

reservation and a "no-man's land" after the end of the Second Seminole War in 1842) and

recorded the locations of the Defendants on trees and/or copper plates by using engraved

codes around 1842.

28.    According to an interview conducted by Mr. Martin with Mr. John F. Fales (a

former archaeologist now deceased) in 2004, Mr. Joe Fales (who was John F. Fales' father,

now deceased) around 1896 befriended Juan Gomes D'Sa, who was 90-years-old at the

time, at Punta Rassa, Florida.

29.    On information and belief, Mr. Martin alleges that Gomes D'Sa gave Joe Fales a

number of charts providing the locations of a number of copper chests containing treasure

that were concealed by the Gasparilla Pirates in the Peace River basin. Gomes D'Sa also

told Joe Fales that he and his fellow pirates often concealed the treasure chests in creeks

underneath overhanging tree limbs. The pirates then attached eight-foot long copper rods

to the treasure chests and secured the other end of the rods to the riverbank.

30.    On information and belief, Mr. Martin alleges that Gomes D'Sa also told Joe Fales

that the pirates also concealed three treasure chests – respectively containing, gold, silver,

and jewelry (including a watch with a long gold chain) – twenty-eight degrees northeast of

a very large cypress located near an elbow on the Peace River.

31.    On information and belief, Mr. Martin alleges that in the 1930s, Mr. Brit Keen (who

Page 10 of 35

A15

is deceased), who was Joe Fales' friend, found a copper plate buried near this cypress tree. This copper plate was engraved with a code indicating the locations of the three treasure chests (hereinafter Keen Copper Plate Code).

32.     On information and belief, Mr. Martin alleges that Gomes D'Sa died in 1900.

33.     On information and belief, Mr. Martin alleges that Joe Fales in 1908 found one of the treasure chests indicated by the charts near Nocatee, Florida in one of the Peace River's tributaries.  Nearby was a tree engraved with a finger pointing to the treasure's site.  The treasure chest was subsequently recovered in 1912 by associates of Joe Fales.  The chest contained three small gunpowder casks, each holding $100,000.00 in Spanish gold coin.

34.     On information and belief, Mr. Martin alleges that Mr. Ernie Hall was a columnist for the *Ft. Myers News-Press*.  Around 1960, Mr. Hall related the following story to Mr. Jack Beater: Juan Gonzalez was a member of the Gasparilla Pirates and lived on Shell Creek near the mouth of the Peace River.  Shortly after the Civil War, Juan Gonzalez made an agreement with a couple of cow hunters to help him retrieve a copper chest containing treasure located near the shore of the Peace River basin.  Before being able to execute the agreement, Juan Gonzalez died.  The cow hunters buried him and subsequently located among Gonzalez's belongings a copper plate engraved with a code (hereinafter "Shell Creek Copper Plate Code").  Ernie Hall showed Jack Beater photostatic copies of the Shell Creek Copper Plate Code.

35.     After deciphering part of the Shell Creek Copper Plate Code, Mr. Martin in 2005

A16

found a tree with its limb hanging over that portion of the Peace River referred to by Juan Gonzalez. Underneath the limb, Mr. Martin found an approximately eight-foot-long rod made of bronze (Defendant TX 1).

36.     Mr. Martin did not find a treasure chest attached to the rod.  Mr. Martin subsequently learned from John Fales that Juan Gomes D'Sa had told Joe Fales that pirates resided in the Peace River basin pretending to be fishermen, and that the unnamed pirate residing near the Peace River made trips to Cuba in a three-masted schooner to obtain provisions and apparently had spent all of the treasure before he died.

37.     On information and belief, Mr. Martin alleges that this schooner sank in the Peace River basin, that its remains are visible on satellite images, that the schooner was used by the Gasparilla Pirates to transport and conceal the Defendants, and that the schooner was fitted out in whole or in part, or held for the purpose of being employed in the commission of piratical aggression, search, restraint, depredation, or seizure, or in the commission of any other act of piracy, as defined and prohibited by the laws of the United States and/or by the law of nations.

38.     After partially deciphering the Keen Copper Plate Code, Mr. Martin in May 2009 found a tree with two hash marks located 28 degrees from the aforementioned cypress located at an elbow on the Peace River. At the same time, he detected a large metal object(s) (believed to be Defendant TX 3(2) and (3)) using a deep penetrating metal detector in the nearby creek approximately 27 feet from the two-hash marked tree and 10

Page 12 of 35

A17

feet from the riverbank, which perfectly conformed to the Keen Copper Plate Code.

39.    Later in December 2010, Mr. Martin found a tree with one hash mark approximately 33 feet from the two-hash marked tree. Between these two marked trees (respectively 2 *estadales* – approximately 22 feet[1] -- from the two-hash marked tree, and 1 *estadal* – approximately 11 feet– from the one-hash marked tree), using a deep penetrating metal detector, Mr. Martin detected another large metallic object (believed to be Defendant TX 3(1)) buried in the soil, which also perfectly conformed to the Keen Copper Plate Code.

40.    The Shell Creek Copper Plate Code and the Keen Copper Plate Code share identical and similar texts. Both contain the identical term "VAR," which Mr. Martin deciphered to mean "*barra*" – the Spanish word for "sandbar." The Shell Creek Copper Plate Code twice contains the term "VER-," and the Keen Copper Plate Code contains the terms "VERA" and "VERAS," which is the Spanish word for "riverbank(s)". The Shell Creek Copper Plate Code twice contains the term "O-X-,"and the Keen Copper Plate Code contains the line "O X O X O X O." Mr. Martin deciphered the letter "O" to mean the Spanish word *origen* ("origin" or location of the treasure chest) and the letter "X" to mean a visual target, specifically and respectively, the aft mast of the three-masted schooner (which is represented on the Shell Creek Copper Plate Code by the Spanish word "*HASTA*," which Mr. Martin deciphered as a Spanish pun for "*asta*" – ship's mast), a cypress tree used as a lookout for the pirates (which is represented on the Shell Creek Copper Plate Code by the Spanish

_____

[1] The *estadal* is an obsolete Spanish unit of distance measurement equal to 10.96 feet, as established by King Carlos IV of Spain in 1801.

Page 13 of 35

phrase "LEGUA 1/10," which Mr. Martin deciphered as a Spanish pun for "*la guarda de cima*" – "the tree top guard"), and various marked trees.

41.    Furthermore, the Shell Creek Copper Plate Code contains the compass bearing of "NXW1/4W" (345.93 degrees).   Mr. Martin found the two-hash marked tree (whose location was provided by Juan Gomes D'Sa and the Keen Copper Plate Code) *exactly* NXW1/4W and *exactly* one *milla marina*[2] ("nautical mile") from where he found Defendant TX 1 (bronze rod).

42.    On information and belief, Mr. Martin alleges that the identical and similar texts shared by the Codes as well as the exact compass bearing providing the locations of the Defendants on both the Shell Creek and Keen Copper Plate Codes indicate that the Codes were engraved by the same member or members of the same crew responsible for piratically taking and concealing Defendants TX 1 and TX 3(1)-(3).

43.    On information and belief, Mr. Martin alleges that Defendants TX 1 and 3(1)-(3) represent different portions of the same property taken piratically, the proceeds from such property taken piratically by, and/or same property belonging to the Gasparilla Pirates.

44.    During September and October 2009, Mr. Martin repeatedly contacted Ms. Barbara Mattick and Dr. Ryan Wheeler of the Florida State Division of Historical Resources to discuss what measures that Mr. Martin should take to protect the integrity of the historic sites associated with the Gasparilla Pirates, including the sites of the Defendants, other

_____

[2] One *milla marina* is equal to 6074.56 feet, as established by King Carlos IV of Spain in 1801.

treasure sites, the trees with pirate markings, and the burial sites of the Gasparilla Pirates.

Mr. Martin explained to Dr. Wheeler that he was not seeking a permit – and the Division

could not lawfully issue one  – under FS ch. 267.12, FAC 1A-31.0062, or FAC 1A-32 to

recover piratically taken goods belonging to other persons.  Instead, Mr. Martin suggested

that the Division could enter into an agreement under F.S. ch. 267.031 with him in order to

participate in Mr. Martin's efforts to ensure the integrity of and/or mitigate any adverse

effects to the Defendants and other historically significant sites and artifacts.  Mr. Martin

also informed Dr. Wheeler by email (Sept. 20, 2009) and telephone (Sept. 23, 2009) that

he had retained the services of archaeologists (including Dr. R. Duncan Mathewson and Ms.

Raelene Brodie).  Mr. Martin also informed Ms. Mattick and Dr. Wheeler that Mr. Martin

planned to recover these treasure chests pursuant to his authority under federal salvage,

forfeiture, and finds law.  Mr. Martin provided Ms. Mattick, Dr. Wheeler, and Mr. Stephen

Mathues (the lawyer for the Division of Historical Resources) a memorandum of law

supporting his authority.  Mr. Martin repeatedly warned Ms. Mattick and Dr. Wheeler that

persons disclosing the information contained in Mr. Martin's communications with them

could subject such persons to imprisonment and/or fines pursuant to 18 U.S.C. § 2232.

45.    Section 2232 of Title 18 of the U.S. Code states in relevant part:

> (b) Impairment of In Rem Jurisdiction. – Whoever, knowing that property
> is subject to the in rem jurisdiction of a United States court for purposes of
> civil forfeiture under Federal law, knowingly and without authority from that
> court . . . takes any action, or knowingly attempts to . . . take any action, for
> the purpose of impairing or defeating the court's continuing in rem
> jurisdiction over the property, shall be fined under this title or imprisoned

not more than 5 years, or both.
(c) Notice of Search or Execution of Seizure Warrant or Warrant of Arrest
In Rem. — Whoever, having knowledge that any person authorized to make
searches and seizures . . .in order to prevent the authorized seizing or
securing of any . . . property, gives notice or attempts to give notice in
advance of the search [or] seizure . . . to any person shall be fined under this
title or imprisoned not more than 5 years, or both.

46.    On October 28, 2009, Dr. Wheeler notified Mr. Martin that the Division of

Historical Resources was "not interested in entering into an agreement with [Mr. Martin]

for the recovery of the Gasparilla pirate treasure or artifacts from state owned lands."

Furthermore, Dr. Wheeler "alerted the state land managing agencies in southwestern Florida

about [Mr. Martin's] interest in removing treasure trove and/or artifacts from state lands."

47.    On information and belief, the Division of Historical Resources did not have the

personnel and/or financial capacities to search for and recover the Defendants.

48.    On information and belief, the Division of Historical Resources has had no intention

of allowing persons to salvage the Defendants and any other treasure chests concealed by

the Gasparilla Pirates.

49.    Having probable cause to believe that the bronze rod represented piratical cargo

based on the information provided by John Fales and the aforementioned sources, Mr.

Martin seized, captured, salvaged, and/or took into his possession Defendant TX 1 in

February 2005.

50.    Approximately 15% of Defendant TX 1 was buried in the bottom sediments of the

river.  The remaining portion of Defendant TX 1 was situated in the water column.  Mr.

Page 16 of 35

Martin removed the buried portion of Defendant TX 1 from the bottom sediments by hand. Approximately 1/10 of 1 cubic foot of soil was displaced. He did not use tools to move the sediments surrounding Defendant TX 1 to gain access to Defendant TX 1. Mr. Martin photographed the site where he found Defendant TX 1.

51.    Defendant TX 1 was partially buried in land beneath the tidal and navigable waters of the Peace River basin in DeSoto County, Florida.

52.    Mr. Martin did not immediately transfer custody of Defendant TX 1 to this Court because he had probable cause to believe that other treasure chests were situated nearby according to the Shell Creek and Keen Copper Plate Codes, and he did not want to take any chance that other persons (including salvors or pirates) would locate these chests before he did. Therefore, he had not and has not completed his salvage and/or capture operations.

53.    Mr. Martin has transferred a 3-1/2 inch segment of Defendant TX 1 to this Court for symbolic arrest *in rem* of the remaining components of Defendant TX 1 and Defendants TX 3(1)-(3).

54.    Defendant TX 1 was not buried on wetlands or a site that supported existing aquatic vegetation.

55.    On information and belief, Mr. Martin alleges that Defendant TX 1 also represents the pre-manufactured bronze material used for making cannon pricks.

56.    Having probable cause to believe that Defendants TX 3(1), (2), and (3) represent piratical cargo based on the information provided by the aforementioned sources and his

own field research and analysis, Mr. Martin attempted to seize, capture, and/or salvage Defendants TX 3(1), (2) and (3) beginning in 2009.

57.     On March 9, 2012, Mr. Martin and his crew members attempted to complete their seizure of Defendants TX 3(1), (2), and (3) by means of excavation.  During the course of excavation, a Florida State Division of Fish and Wildlife Conservation Commission officer interrupted Mr. Martin's excavation to inquire as to the nature of Mr. Martin's activities. Mr. Martin informed the officer that he was seizing evidence to transfer to the custody of this Court in a civil forfeiture case. Mr. Martin also informed the officer that the landowner, Peaceful Horse LLC, had raised no objection to Mr. Martin's seizure of this evidence.

58.     Two years earlier on December 23, 2009, Mr. Martin notified Mr. Dennis Fullenkamp, who is Peaceful Horse LLC's agent, by email that Mr. Martin needed to seize the Defendants and transfer them to the custody of the federal court as part of a federal case. Subsequently, Peaceful Horse LLC through Mr. Fullenkamp and its attorney, Mr. Bob Rocke, did not raise any objection to the seizure and did not assert any proprietary interest in the Defendants.

59.     The officer subsequently learned and informed Mr. Martin that Mosaic Fertilizer LLC had purchased the property within the last ninety days. Mr. Martin told the officer that Mr. Martin did not need to receive permission from Mosaic Fertilizer LLC because the federal forfeiture statute authorized him to seize the evidence  wherever found in the United States on the basis of probable cause.  Furthermore, Mr. Martin informed the officer that

18 U.S.C. § 2232 prohibited persons from attempting to interfere with his seizure of the evidence. The officer wrote 18 U.S.C. § 2232 on his palm.

60.    Subsequently, the officer informed Mr. Martin that he had spoken to Mr. Paul Hale, a property manager for Mosaic Fertilizer LLC. (The officer was not sure of the spelling of Mr. Hale's name.) The officer informed Mr. Martin that Mr. Hale stated that Mr. Martin was trespassing on the property. The officer also informed Mr. Martin that he had told Mr. Hale that Mr. Martin had informed him that he was authorized by federal law to seize the evidence for submission in a civil forfeiture case and that any person who attempts to interfere with his seizure was subject to prosecution under 18 U.S.C. § 2232..

61.    The officer then informed Mr. Martin that he had spoken to his superiors and that Mr. Martin should cease his excavation activities. Mr. Martin informed the officer that Mr. Martin would comply with his suggestion as a matter of courtesy to the Florida Division of Fish and Wildlife Conservation Commission. The officer then issued a trespass warning to Mr. Martin. Mr. Martin informed the officer that he would seek an order from this Court to ensure that his future attempts to seize the evidence would not be interrupted. Mr. Martin also asked the officer to not disclose the location of the evidence to anyone. The officer agreed to do so. The officer repeatedly apologized to Mr. Martin and his crew members for interrupting their activities and offered to help them transport their dredge pump back to their car. Mr. Martin thanked the officer and accepted his kind offer.

62.    Mr. Martin subsequently learned that Mosaic Fertilizer LLC has entered into a

settlement agreement with the Sierra Club, People for Protecting the Peace River, Inc., and Manasota-88, Inc. to transfer title of the property to the State of Florida to establish a state park or, in the alternative, to a not-for-profit organization for permanent conservation. This settlement agreement is pending approval by the U.S. District Court for the Middle District of Florida, Jacksonville Division.

63.     On March 20, 2012, Mr. Martin contacted Mosaic Fertilizer LLC, and Ms. Diana Jagiella, who is Mosaic Fertilizer LLC's Director of Mine Regulatory Affairs and a lawyer, returned Mr. Martin's telephone call. Mr. Martin informed Ms. Jagiella that he was informing Mosaic Fertilizer LLC of this case as a matter of courtesy. Mr. Martin informed Ms. Jagiella that he was in the process of completing his capture and/or salvage of Defendants TX 3(1)-(3) pursuant to his authority under 33 U.S.C. §§ 343-345 and general maritime law governing piratical salvage and forfeitures and that anyone who attempts to interfere with his captures would be violating 18 U.S.C. § 2232. Mr. Martin also suggested that Mosaic Fertilizer LLC may be interested in assisting Mr. Martin in recovering Defendants TX 3(1)-(3) in consideration for receiving a share of any award that this Court may award to Mr. Martin. Mr. Martin told Ms. Jagiella that she should give this matter her highest priority because he needed to transfer custody of Defendant TX 1 to the U.S. Marshal and complete his capture of the other Defendants as soon as possible given the fact that the excavation sites are exposed to the public. Ms. Jagiella told Mr. Martin that she would call him the following day after speaking with Mosaic Fertilizer LLC's land property

Page 20 of 35

manager.  Ms. Jagiella expressed no objections to Mr. Martin's capture or salvage operations. Ms. Jagiella did not call Mr. Martin the following day and did not return his calls on March 21 and 22.

64.    On March 22, 2012, Mr. Martin also spoke to Ms. Marcy Lahart and Mr. Eric Huber, who legally represent the Sierra Club, People for Protecting the Peace River, Inc., and Manasota-88, Inc. in order to inform them of this case as a matter of courtesy and to discuss any possible concerns that their clients may have regarding Mr. Martin operations. Neither Ms. Lahart or Mr. Huber expressed any objections to Mr. Martin's capture or salvage operations subject to their clients' approval. Mr. Huber informed Mr. Martin that under the settlement agreement with Mosaic Fertilizer LLC, it cannot perform any excavation activities without amending the settlement agreement.

65.    On March 23, 2012, Mr. Martin emailed Ms. Jagiella a legal memorandum in support of his authority to seize Defendants TX 3(1)-(3) and informed her that he had spoken to Mr. Huber.

66.    Later on March 23, 2012, Mr. David Weinstein of the law firm of Greenberg Traurig called Mr. Martin to inform him that he was representing Mosaic Fertilizer LLC.  He informed Mr. Martin that he had read the legal memorandum that Mr. Martin had emailed Ms. Jagiella and threatened Mr. Martin by stating that he would get a warrant of arrest issued against Mr. Martin for trespass if Mr. Martin should enter Mosaic Fertilizer LLC's property.  Mr. Martin stated to Mr. Weinstein that he did not understand Mr. Weinstein's

hostile attitude, that Mr. Huber had raised no objections to Mosaic Fertilizer LLC's assistance in recovering the Defendants, and that all parties – as well as the communities of Tampa, Port Charlotte, and Punta Gorda – would benefit from the recovery of the Defendants. Mr. Weinstein repeated his threat. Mr. Martin warned him that anyone who attempts to interfere with his capture of the Defendants would place them in jeopardy of violating 18 U.S.C. § 2232.

67.     On April 10, 2012, Mr. Martin received by email a letter from Mr. David Weinstein dated April 9, 2012 informing him that the U.S. District Court Judge Henry L. Adams had approved the settlement agreement on March 28, 2012, and that the settlement agreement expressly forbids any ground disturbing activities. Mr. Weinstein again stated that he would report Mr. Martin to state law enforcement officials in accordance with Florida law concerning trespass if he should enter onto Mosaic Fertilizer LLC's property.

68.     Coincidentally and without knowledge that the settlement agreement had been approved, Mr. Martin filed his original Complaint also on March 28, 2012. Furthermore, Mr. Martin is not a party to the settlement agreement.

69.     On information and belief, Mr. Martin alleges that the settlement agreement's prohibition of any ground disturbing activities does not extend to him and that he and the Defendants are not subject to any restraining order.

70.     On information and belief, Mr. Martin alleges that Defendant TX 3(1) remains buried on private land of the Peace River basin in DeSoto County, Florida.

A27

71.    On information and belief, Mr. Martin alleges that Defendant TX 3(1) represents cargo that was buried on an island that was accessible only by vessel in the 1800s.

72.    Defendant TX3(1) is isolated and not in geographical association with any shipwreck. Defendant TX3(1) was portable.

73.    Mr. Martin and his crew members will excavate no more than 25 cubic yards of soil from a surface area of no more than 100 square feet in attempting to retrieve Defendant TX 3(1). Mr. Martin and his crew members will return the site back to its original condition.

74.    Defendant TX 3 (1) is not buried on wetlands or lands supporting aquatic vegetation.

75.    On information and belief, Mr. Martin alleges that Defendants TX 3(2) and (3) remain buried in land beneath the tidal waters (specifically, the shore) of the Peace River basin in DeSoto County, Florida.

76.    On information and belief, Mr. Martin alleges that Defendants TX 3(2) and (3) represent cargo that was concealed in a creek within ten feet of an island that was accessible only by vessel in the 1800s.

77.    Defendants TX3(2) and (3) are isolated and not in geographical association with any shipwreck. Defendants TX3(2) and (3) were portable.

78.    Mr. Martin and his crew members will dredge no more than 25 cubic yards of bottom sediment from a bottom surface area of no more than 100 square feet. Mr. Martin and his crew members will return the site back to its original condition.

Page 23 of 35

79.    Defendants TX 3 (2) and (3) are not buried on wetlands or a site that supported existing aquatic vegetation. There will be no obstruction to navigation.

80.    On information and belief, Mr. Martin alleges that Defendants TX3(2) and (3) have moved a number of yards from their original location due to a combination of human activity (*viz.*, nearby phosphate mining and the drainage of the Everglades that led to the lowering of the water level) and the actions of the natural elements (*viz.*, tidal action, gravity) that has occurred over the last 170 years.

81.    Mr. Martin currently has and is conserving the Defendant TX 1 consistent with archaeological protocols.

82.    Mr. Martin and his crew members will recover and conserve Defendants TX 3(1)-(3) in a manner consistent with archaeological protocols.

83.    On information and belief, Mr. Martin alleges that his recovery of the Defendants fully complies with the conditions and requirements of the U.S. Army Corps of Engineers Nationwide Permit No. 19.

84.    On information and belief, Mr. Martin alleges that his recovery of the Defendants complies with those conditions and requirements of Florida State Department of Environmental Protection General Permit for Minor Activities and the Division of Historical Resources for minor dredging activities and archaeological recovery insofar as these conditions and requirements do not violate federal law.

85.    Mr. Martin brought the Defendant TX 1 into the Port of Tampa, Florida.

Page 24 of 35

86.    On information and belief, Mr. Martin alleges that no other salvor was working on the sites where the Defendants respectively were recovered and remain, and no salvor has sought to protect an interest in the Defendants through an arrest. On information and belief, Mr. Martin alleges that no other person(s) or the State of Florida has either actual or constructive possession or control of the Defendants.

87.    Upon the filing of this action, Mr. Martin stands ready to transfer custody of the remaining portions of Defendant TX 1 under his dominion, control and/or in his possession to the custody of the United States Marshal for the Middle District of Florida if this Court should so order.  Upon the completion of his capture, seizure, salvage, and/or recovery of Defendants TX 3(1)-(3), Mr. Martin stands ready to transfer custody of these Defendants to the custody of the United States Marshal for the Middle District of Florida if this Court should so order.

88.    This Court has, or will have, during the pendency of this action jurisdiction over any potential claimant or competing salvor by virtue of their contacts to this forum; the nature of Mr. Martin's admiralty and maritime action(s); the relationship of the potential claimant and/or salvor to Mr. Martin; the forum and the cause of action; and/or under the principles of jurisdiction by necessity and/or expediency.

89.    This Court's exercise of jurisdiction over potential competing claimants and/or salvors is necessary to prevent destruction of this Court's actual jurisdiction.

90.    Mr. Martin has spent substantial time, money, and effort in locating, surveying,

Page 25 of 35

photographing, and researching the history of the Defendants; and in planning the physical recovery of the Defendants.

91.    During these survey and recovery operations, Mr. Martin has incurred injuries to his person, and great risk to his health.

92.    Mr. Martin was assisted in the salvage, capture, and/or discovery of the Defendants by a number of crew members under his command.  In consideration of their assistance in the salvage, capture, and/or discovery of the Defendants, these crew members and other shareholders have made agreements with Mr. Martin to receive shares from any award that this Court awards Mr. Martin.

93.    Furthermore, these crew members and other shareholders have agreed to cap their share amounts in order to enable Mr. Martin to establish a charitable foundation for the protection of human rights.

94.    Mr. Martin does not know the value of the Defendants, salvage amount, or amount of attorney fees at this time.

## PLAINTIFF'S CLAIMS

## COUNT 1: SALVAGE AWARD CLAIM PURSUANT TO LAW OF SALVAGE

95.    Mr. Martin incorporates herein by reference, as though fully set forth herein, the allegations set forth in paragraphs 1-94.

96.    This Count arises under Supplemental Admiralty Rule C, 28 U.S.C. § 1333, the *International Convention on Salvage*, the Admiralty Extension Act, and the general

Page 26 of 35

A31

maritime law inasmuch as salvage services constitute a preferred maritime lien.

97.    The Defendants respectively are and were subject to maritime peril, and are or were in locations from which the Defendants could or cannot not be rescued without the voluntary and successful or useful services of Mr. Martin, his crew members, agents and associates.

98.    Mr. Martin, his crew members, agents, and associates are and were under no legal obligation or official duty to render salvage services to the Defendants.

99.    Mr. Martin's voluntary services have been and will continue to be successful or useful in rescuing the Defendants in order to return them to their rightful owners, to investigate and research the Defendants, and to return them to the stream of commerce from which they were lost.

100.    Mr. Martin, by virtue of such services so performed, the private risk capital expended, the personal injury to him, the risk of additional injury to him, and the time spent researching, finding and/or recovering the Defendants is entitled to a liberal salvage award for such services.

101.    Mr. Martin also is entitled to reasonable counsel fees.


**COUNT 2: FORFEITURE CLAIM PURSUANT TO CHAPTER 7 OF TITLE 33 OF THE U.S. CODE, AND THE GENERAL MARITIME LAW GOVERNING PIRACY**

102.    Mr. Martin incorporates herein by reference, as though fully set forth herein, the

allegations set forth in paragraphs 1-101.

103.    This Count arises under Supplemental Admiralty Rule G; 33 U.S.C. §§ 383, 384, and 385; the Admiralty Extension Act; and the general maritime law governing piracy.

104.    Mr. Martin is the commander and owner of a merchant vessel.  Mr. Martin did send and bring Defendant TX 1 into the Port of Tampa for adjudication of award and/or title by this Court.

105.    Upon completion of his capture of Defendants TX 3(1)-(3), Mr. Martin will bring Defendants TX 3(1)-(3) into the Port of Tampa for adjudication of award and/or title by this Court.

106.    Mr. Martin and the United States are entitled to proceeds from the sale of the Defendants or title to the Defendants  as may be determined by this Court pursuant to the U.S. law and general maritime law governing piracy.

107.    Mr. Martin, by virtue of such services so performed, the private risk capital expended, the personal injury to him, risk of additional injury to him, and the time spent researching, finding, capturing, and/or recovering the Defendants is entitled to a portion of the proceeds from sale of the Defendants and/or title to a portion of the Defendants as award.

**COUNT 3: POSSESSORY AND OWNERSHIP CLAIM PURSUANT TO THE LAW OF FINDS**

108.    Mr. Martin incorporates herein by reference, as though fully set forth herein, the allegations set forth in paragraphs 1-107.

109.    This Count arises under Supplemental Admiralty Rule D, the Admiralty Extension Act, and the general maritime law.

110.    Mr. Martin is or will be, by virtue of his exclusive possession, dominion, and control of the Defendants, and has taken or will take such actions as are necessary to constitute continued possession, dominion, and control of the Defendants to establish title to the Defendants.

111.    Mr. Martin is entitled to an adjudication of title and ownership in the Defendants. If the Defendants are determined to have been abandoned and/or unclaimed, Mr. Martin is entitled to title to the Defendants.

**COUNT FOUR: DECLARATORY JUDGMENT**

112.    Mr. Martin incorporates herein by reference, as though fully set forth herein, the allegations set forth in paragraphs 1-111.

113.    This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201(a).

114.    Defendant TX 1 was partially buried in land permanently or periodically beneath the navigable and tidal waters of the Peace River basin up to but not above the line of the mean high tide of the Peace River.

115.    Defendant TX 3(1) is buried on private land.

116.    Defendant TX 3(2) and (3) are buried in land periodically beneath the tidal waters of the Peace River basin up to but not above the line of the mean high tide of the Peace River.

117.    The Defendants were property taken piratically, the proceeds from such property taken piratically, and/or property belonging to pirates operating a vessel(s) fitted out in whole or in part, or held for the purpose of being employed in the commission of piratical aggression, search, restraint, depredation, or seizure, or in the commission of any other act of piracy, as defined by U.S. law and/or international law.

118.    In the alternative, if the Defendants do not represent cargo of a piratical nature or origin, the Defendants still represent cargo.

119.    No foreign, federal agency, state, or local government, and/or person has or had the authority to interfere with Mr. Martin's exploration, seizure, capture, possession, and recovery of the Defendants and other associated artifacts (including other treasure sites), or to grant, condition or deny the right of Mr. Martin to do so; and the Defendants and other associated artifacts are subject to the U.S. law and general maritime law governing salvage, piracy, and/or finds.

**PRAYER FOR RELIEF**

120.    WHEREFORE, Mr. Martin prays for relief as follows:

121.    (a)  that a Declaratory Judgment issue that the Defendants are subject to the U.S.

Page 30 of 35

A35

law and general maritime law governing piracy, salvage, and finds;

122.    (b) that Mr. Martin be awarded a liberal salvage award (including reasonable counsel fees), preferably in artifacts and/or specie, with the amount and/or composition of such award and fees as may be determined by this Court pursuant to the U.S. law and general maritime law governing salvage and piracy;

123.    (c) that the Defendants be determined by this Court to be property taken piratically, the proceeds from such property taken piratically, and/or property belonging to pirates and that Mr. Martin and the United States be awarded, preferably in artifacts and/or specie, with the amount and/or composition of such award as may be determined by this Court, pursuant to the U.S. law and general maritime law governing piracy;

124.    (d) that, in the alternative, Mr. Martin be adjudged the true, sole, and exclusive owner of the Defendants under the law of finds;

125.    (e) that process *in rem* and a Warrant of Arrest may issue in due form of law, in accordance with the practice of this Court in causes of admiralty and maritime jurisdiction against the aforesaid Defendants with notice to all persons claiming an interest in the Defendants to appear and answer this Complaint, or suffer default therefor, and to show cause as to why the Defendants recovered by Mr. Martin, his agents and associates should not be:

    (i) sold or appropriately disposed of in satisfaction of any judgment in favor of Mr. Martin for a salvage award and reasonable legal fees; or

Page 31 of 35

(ii) sold or appropriately disposed of in satisfaction of any judgment in favor of Mr.

Martin and the United States as a forfeiture award;

(iii) alternatively, delivered to Mr. Martin as the sole and exclusive owner of the

Defendants; and/or

(iv) that Mr. Martin may have such other and further relief as the justice of this

cause may require.

Respectfully submitted,

_____    Dated: 4/13/2012

Francisco Martin
5004 E. Fowler Ave.
Suite C234
Tampa, FL 33617-2181
Tel: 813-374-3869
Email: <ricenter@igc.org>

Page 32 of 35

A37

**VERIFICATION**

STATE OF FLORIDA
HILLSBOROUGH COUNTY

      I, Francisco Martin, hereby verify and declare under penalty of perjury that I wrote

and have read the foregoing Complaint and know the contents thereof, and that the matters

contained in the Complaint are true and correct to my own direct knowledge, except those

matters herein stated to be alleged on information and belief and, as to those matters, I

believe them to be true and correct.

      The sources of my knowledge and information, and the grounds of my belief are

public records from a legally authorized investigation; statements in ancient documents;

statements in learned treatises, periodicals, and/or pamphlets; information supplied to me

by credible persons who have personal and/or familial knowledge of the events and

circumstances described herein; and my own investigation of this case.

Executed this _13th_ day of _april_ 2012.

_F. F. Martin_ (signature)

Francisco Martin

      Before me, the undersigned authority, personally appeared this day Francisco

Martin, who has produced a Florida State Driver's License as identification, and who was

duly sworn and says that he wrote and has read the foregoing Complaint and knows the

Page 33 of 35

A38

contents thereof, and that the matters contained in the Complaint are true and correct to his

own direct knowledge, except those matters herein stated to be alleged on information and

belief and, as to those matters, he believes them to be true and correct.

SWORN TO AND SUBSCRIBED before me this _____ 13th _____ day of _____ April _____,
2012.

_Cinthia Sanchez_
Notary Public, State of Florida

CINTHIA SANCHEZ
Notary Public, State of Florida
Commission# DD905531
My comm. expires July 12, 2013

**Page 34 of 35**

A39

**TAB 8**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FRANCISCO MARTIN,**

**v.**                                                      **Case No.: 8:12-CV-656-T-30EAJ**

**ONE BRONZE ROD,**
**ONE CHEST,**
 **(including contents and associated artifacts),**
**ONE CHEST,**
 **(including contents and associated artifacts),**
**ONE CHEST,**
 **(including contents and associated artifacts),**
_____/

## <u>SEALED ORDER</u>

THIS CAUSE comes on for consideration sua sponte, based on the attachment to Plaintiff's

Verified Complaint.

The Clerk's Office is directed to temporarily take custody of a 3 ½ inch segment of

Defendant's TX 1 (one bronze rod) filed as an attachment to the Complaint. The Clerk's Office is

further directed to place said metal segment in the sealed vault for safe keeping pending further order

of the court.  This order is not autorizing the arrest of TX1 and does not signify that the court finds

in <u>rem</u> jurisdiction. Those issues are under advisement.

DONE and ORDERED at Tampa, Florida this _13th_ day of April, 2012.

ELIZABETH A. JENKINS
UNITED STATES MAGISTRATE JUDGE

S-8

A40

**TAB 10**

"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

FRANCISCO MARTIN,

     Plaintiff,

vs.                                                                    Case No.: 8:12-CV-656-T-30EAJ

ONE BRONZE ROD,
ONE CHEST,
(including its contents and associated artifacts),
ONE CHEST,
(including its contents and associated artifacts), and
ONE CHEST,
(including its contents and associated artifacts).

     Defendants *in rem*.

_____/

## ORDER

     Before the court is Plaintiff's **Amended Motion for an Order Directing the Clerk to Issue a Warrant of Arrest In Rem to the U.S. Marshal** (Dkt. 6).[1]

     Plaintiff filed an Verified Amended Complaint In Admiralty In Rem against Defendants One Bronze Rod ("Defendant TX 1"), One Chest, including its contents and associated artifacts, ("Defendant TX 3(1)"), One Chest, including its contents and associated artifacts, ("Defendant TX 3(2)"), and One Chest, including its contents and associated artifacts ("Defendant TX 3(3)").  He alleges that the in rem Defendants are cargo from a pirate ship intentionally removed from the vessel and concealed more than 150 years ago in part of the Peace River basin in DeSoto County, Florida.

     Plaintiff requests the issuance of a warrant of arrest against the in rem Defendants under

---

[1]  Plaintiff's Motion for Order Directing Clerk to Issue Warrant of Arrest in Rem is denied as moot.

A41

Rules C and G of the Supplemental Rules for Admiralty and Maritime Claims and Local Admiralty Rule 7.03(b)(1). The complaint invokes the court's admiralty jurisdiction[2] and includes four claims: a salvage award pursuant to the law of salvage (Count I); forfeiture pursuant to Chapter 7 of Title 33 of the U.S. Code and the general maritime law governing piracy (Count II); possessory and ownership pursuant to the law of finds (Count III); and a declaratory judgment (Count IV). Only Count I expressly asserts a maritime lien and alleges facts that may give rise to a maritime lien.

An action may be brought in rem to enforce a maritime lien or when a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto. Fed. R. Civ. P., Supp. R. C(1). Upon a prima facie showing that the plaintiff has an action in rem, the court may issue an order directing the clerk to issue a warrant for the arrest of the res that is the subject of the action. Fed. R. Civ. P., Supp. R. (C)(3)(a) and advisory committee's note (1985). This has also been described as a probable cause requirement. See Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., No. 99-CV-471-J-10C, 1999 WL 33218589, *2 (M.D. Fla. Nov. 17, 1999).

Three elements are necessary to a valid salvage claim: (1) a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance; (2) a voluntary act by the salvor under no pre-existing official or contractual duty to the owner; and (3) success in saving, or in helping to save, at least part of the property at risk. Klein v. Unidentified Wrecked and Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985) (citations omitted). "Salvors, under the maritime law, have a lien upon the property saved, which enables them to maintain a suit in rem against the ship or cargo, or both where both are saved in whole or in part." The Sabine, 101

---

[2] A nexus with traditional maritime activity must exist to establish admiralty jurisdiction. Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 348 (11th Cir. 1994) (citation omitted).

U.S. 384, 386 (1879).

To constitute a maritime peril, "[t]he property must be in danger, either presently or reasonably to be apprehended." Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330, 337 n.13 (5th Cir. 1978) (citations omitted). The peril required in a salvage service "need not necessarily be one of imminent and absolute danger." Id. However, the property must be "in peril of being lost through the actions of the elements." Id. at 337. Also, "the threat must be something more than the inevitable deterioration that any vessel left untended would suffer." Faneuil Advisors, Inc. v. O/S Sea Hawk, 50 F.3d 88, 93 (1st Cir. 1995) (citation omitted).

Assuming the truth of Plaintiff's allegations – that Defendants are cargo from a vessel – the Amended Complaint alleges sufficient facts showing a maritime peril for Defendant TX 1, but fails to allege sufficient facts showing a maritime peril for Defendants TX 3(1), (2), and (3).

In 2005, Plaintiff found Defendant TX 1, described as a bronze rod, "approximately 15% buried in the bottom sediments" in "land beneath the tidal and navigable waters of the Peace River basin" with the remainder "situated in the water column." (Dkt. 5 at 16-17) Thus, Defendant TX 1, submerged in the water, arguably posed a hazard to navigation or risked deterioration or loss due to river current and weather conditions at the time it was salvaged by Plaintiff. While Defendants TX 3(2) and (3) are allegedly "buried in land beneath the tidal waters," there is no allegation that they are in danger of loss or destruction. (Id. at 23) And Defendant TX 3(1) is allegedly buried on an island, not in navigable waters. (Id.)

Even assuming Plaintiff has shown a maritime peril for Defendants TX 3(1), (2), and (3), the allegations of the Amended Complaint do not establish success in saving, or helping to save, at least part of the property at risk. A potential salvor must offer proof that the property was salvaged, such

3

A43

as presenting artifacts or some portion of the res. Smith v. The Abandoned Vessel, 610 F. Supp. 2d 739, 757 (S.D. Tex. 2009) (citations omitted).

Even though Plaintiff alleges success in salvaging Defendant TX 1 and has filed with the complaint a three and one-half inch portion of Defendant TX 1, Plaintiff alleges no facts showing success, partial or otherwise, in salvaging the other Defendants. Plaintiff indicates that he has researched the history of the area, has been to the Defendants' alleged locations, has a crew ready to conduct salvage operations, and has attempted to gain permission from the State of Florida and private landowners to conduct salvage operations. Plaintiff also states that in 2009 and 2010, he detected three large metallic objects that he believes to be Defendants TX 3(1), (2), and (3), using a deep penetrating metal detector. (Dkt. 5 at 12-13) However, Plaintiff has recovered no artifacts from Defendants TX 3(1), (2), and (3) suggesting that anything of value or historical significance actually exists where he claims it exists.

Moreover, Plaintiff does not have actual or constructive possession of Defendants TX 3(1), (2), and (3). Although Plaintiff alleges constructive possession of these Defendants based on possession of Defendant TX 1, Plaintiff also states that these Defendants are isolated, not in geographical association with any shipwreck, and fails to show a sufficient basis to consider the res as undivided. (Dkt. 5 at 23); see R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 964 (4th Cir. 1999) (citation omitted).

Plaintiff also asserts a forfeiture claim pursuant to Sections 383, 384, and 385 of Title 33 of the U.S. Code, Rule G of the Supplemental Rules for Admiralty or Maritime Claims, and the general maritime law governing piracy. Pursuant to Rule G, the court may issue a warrant of arrest on a finding of probable cause. Fed. R. Civ. P., Supp. R. G(3)(b)(ii). Section 383 authorizes any United

4

A44

States merchant vessel to defend against any piratically aggressive vessel, capture that vessel, and retake any other ship that the vessel previously captured. 33 U.S.C. § 383. Section 384 provides for condemnation of the captured vessel brought into any port of the United States. 33 U.S.C. § 384.[3]

Assuming that cargo separate from a vessel can give rise to a forfeiture action in rem, the Amended Complaint does not show a sufficient nexus to piratical cargo. Plaintiff has not defended against any belligerent vessel, captured such vessel or its cargo as part of a seizure, or even brought into any port of the United States any cargo or artifacts, other than Defendant TX 1.[4] Plaintiff asserts that Defendants TX 3(1), (2), and (3) are piratical cargo based on the location of Defendant TX 1. However, Defendant TX 1 is described as an "eight-foot-long rod made of bronze" and was found at least four years prior to Plaintiff's detection of the other Defendants. (Dkt. 5 at 11-13) As stated above, Plaintiff has not provided sufficient evidence that the in rem Defendants are anything of value or historical significance. Plaintiff does not allege sufficient facts to support a forfeiture action in rem for piratical cargo.

Although Plaintiff does not expressly assert his claim under the law of finds as a basis for

---

[3] Section 385 is not applicable as Plaintiff's vessel is not a public-armed vessel of the United States or otherwise authorized under Section 386. See 33 U.S.C. §§ 385, 386.

[4] Cf. Harmony v. United States, 43 U.S. (2 How.) 210, 236 (1844) (condemning the armed vessel Malek Adhel captured by a United States war vessel to punish the crime of piracy); The Palmyra, 25 U.S. (12 Wheat.) 1, 7-8 (1827) (proceeding in rem on a libel claim regarding the armed vessel Palmyra captured by a United States war vessel); The Marianna Flora, 24 U.S. (11 Wheat.) 1, 2 (1825) (involving an armed vessel attacking a United States vessel); Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch.) 64, 118-121 (1804) (denying forfeiture and salvage for recapture of a Danish vessel from a French privateer); Talbot v. Seeman, 5 U.S. (1 Cranch.) 1, 1 (1801) (allowing salvage to a United States ship of war for the recapture of a Hamburgh vessel from the French).

5

A45

a warrant of arrest in rem, even if Plaintiff had, the Amended Complaint does not justify issuance of a warrant of arrest under the law of finds and Rule D of the Supplemental Rules for Admiralty and Maritime Claims.[5]

Having considered the Verified Amended Complaint In Admiralty In Rem and accepted the allegations as true, Plaintiff fails to allege a sufficient basis for a maritime lien or an action in rem to justify issuance of a warrant of arrest against Defendants TX 3(1), (2), and (3).[6] As for Defendant TX 1, the facts alleging a maritime lien under the law of salvage are sufficient to authorize the issue of a warrant of arrest for that Defendant.

Accordingly, and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)    Plaintiff's Amended Motion for an Order Directing the Clerk to Issue a Warrant of Arrest In Rem to the U.S. Marshal (Dkt. 6) is **GRANTED in part and DENIED in part**.

(2)    The Clerk is directed to issue a warrant of arrest in rem to the U.S. Marshal for Defendant TX 1 only.

**DONE** and **ORDERED** in Tampa, Florida on this 30th day of April, 2012.

---

[5] Plaintiff has not shown constructive possession of Defendants TX 3(1), (2), and (3) or established that the property is unowned or abandoned. See R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel, 435, 532 n.3 (4th Cir. 2006) (citation omitted).

[6] The Amended Complaint, at least at this stage, does not appear to implicate the Abandoned Shipwreck Act of 1987. 43 U.S.C. §§ 2101-2106 (1988). It alleges that Defendants TX 3(1), (2), and (3) are isolated and not in geographical association with any shipwreck. (Dkt. 5 at 23)

ELIZABETH A JENKINS
United States Magistrate Judge

7

A47

**TAB 12**

"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**IN ADMIRALTY**

**FRANCISCO MARTIN,**

     **Plaintiff**

v.                                             **Case No. 8:12-CV-656-T-30EAJ**

**ONE BRONZE ROD,**
**ONE CHEST,**
**(including its contents and associated artifacts),**
**ONE CHEST,**
**(including its contents and associated artifacts), and**
**ONE CHEST,**
**(including its contents and associated artifacts).**

     **Defendants *in rem.***
_____/

**ORDER**

     Before the court is Plaintiff's **Motion for Appointment of Substitute Custodian** (Dkt. 7). Plaintiff Francisco Martin requests that the court appoint him Substitute Custodian for the in rem Defendants.  On April 30, 2012, the court issued a warrant of arrest for Defendant One Bronze Rod ("Defendant TX 1") only.

     The court finds that: (a) Francisco Martin is duly qualified to serve as the Substitute Custodian of Defendant TX 1; (b) Francisco Martin has agreed to assume the responsibility of safekeeping Defendant TX 1; and (c) Francisco Martin has agreed to act as Substitute Custodian until further order of the court.

     The United States Marshal for the Middle District of Florida is authorized and directed to surrender the possession thereof to the Substitute Custodian named herein, Francisco Martin, and that upon such surrender, the Marshal shall be discharged from the duties and responsibilities for

A48

the safekeeping of Defendant TX 1 and held harmless by any party for any and all claims arising whatsoever out of said substitute possession and safekeeping.

Francisco Martin is appointed the Substitute Custodian of Defendant TX 1. Francisco Martin shall retain Defendant TX 1 in his possession and safekeeping until further order of this Court. All Marshal's costs, if any, shall be paid prior to the release of said property; the Substitute Custodian shall provide a receipt for the property; and the Marshal shall attest to the date and time of release on a certified copy of thereof.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1)    Plaintiff's Motion for Appointment of Substitute Custodian (Dkt. 7) is **GRANTED in part and DENIED in part**, as set forth above.

(2)    Plaintiff shall file with the court a proper consent and indemnification agreement prior to the U.S. Marshal executing the warrant of arrest for Defendant TX 1. See Local Admiralty Rule 7.05(k)(3), M.D. Fla.

**DONE and ORDERED** in Tampa, Florida, this 1st day of May, 2012.

ELIZABETH A JENKINS
United States Magistrate Judge

2

A49

**TAB 17**

"

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY**

**FRANCISCO MARTIN,**

     **Plaintiff,**

**vs.**                                     **Case No.: 8:12-CV-656-T-30EAJ**

**ONE BRONZE ROD,
ONE CHEST,
(including its contents and associated artifacts),
ONE CHEST,
(including its contents and associated artifacts), and
ONE CHEST,
(including its contents and associated artifacts).**

     **Defendants *in rem.***

_____/

## ORDER

Before the court is Plaintiff's **Motions for Court to Reconsider its Partial Denial of Plaintiff's Motion for an Order Directing the Clerk to Issue a Warrant of Arrest In Rem to the U.S. Marshal, to Reconsider Court's Partial Denial of Plaintiff's Motion for Appointment of Substitute Custodian, to Alternatively Direct the Clerk to Issue Separate Warrants of Arrest, and to Hold Oral Argument in a Hearing in Camera on These Matters** (Dkt. 15).

On April 30, 2012, the Court issued a warrant of arrest in rem against Defendant TX 1, but declined to issue a warrant of arrest in rem against Defendants TX 3(1)-(3). Plaintiff asks the Court to reconsider his motion for a warrant of arrest in rem, appoint him substitute custodian of Defendants TX 3(1)-(3), and hold oral argument and an in camera hearing on these matters. For the reasons stated below, the motion is denied.

A motion for reconsideration is an extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources. Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc., 169 F.R.D. 680, 685 (M.D. Fla. 1996) (citation omitted). There are three grounds justifying reconsideration of an order: (1) an intervening change in controlling law, (2) the availability of new evidence, and (3) the need to correct clear error or manifest injustice. Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc., 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999) (citation omitted).

Plaintiff does not argue that there has been an intervening change in controlling law, present previously unavailable evidence, or show that reconsideration is necessary to correct a clear error or manifest injustice. Plaintiff requests reconsideration of his motion for a warrant of arrest in rem because: (1) Defendants TX 3(1)-(3) were and are subject to maritime peril; (2) the Court has constructive possession or control over Defendants TX 3(1)-(3) based on actual possession or control of Defendant TX 1; (3) Plaintiff is a "captor" under 33 U.S.C. §§ 383-84 and the general maritime law governing capture and forfeiture of piratical cargo; and (4) actual or constructive possession or control of Defendants is not required for in rem jurisdiction in forfeiture actions.

First, Plaintiff contends that Defendants TX 3(1)-(3) were and are subject to maritime peril. But he has shown neither a maritime peril for Defendants TX 3(1)-(3) nor the requirement of success in saving, or helping to save, at least part of the property at risk. See Klein v. Unidentified Wrecked and Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985) (citations omitted).

Next, Plaintiff alleges that the Court has constructive possession or control over Defendants TX 3(1)-(3) based on actual possession or control of Defendant TX 1. According to Plaintiff, the Court has constructive possession because "Defendants TX 3(1)-(3) are not isolated from and are in association with Defendant TX 1 . . . and each other in the sense that they are portions of the same

2

A51

cargo that belonged to the Gasparilla Pirates' schooner." (Dkt. 15 at 8)

A court "can exercise constructive possession over a shipwreck when part of the shipwreck is presented to the district court." Odyssey Marine Exploration, Inc. v. The Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1175 (11th Cir. 2011). However, Plaintiff has not presented any portion of a shipwreck. As stated in the prior order, Defendants "are isolated and not in geographical association with any shipwreck." (Dkt. 5 at 23) Plaintiff fails to sufficiently allege that the Court has constructive possession or control over Defendants TX 3(1)-(3).

Plaintiff claims that he is a captor of Defendant TX 1 under 33 U.S.C. §§ 383-84 and the general maritime law governing capture and forfeiture of piratical cargo.[1] He contends that no requirement exists that he defend against a vessel, meet resistence from a vessel, capture the cargo while the cargo is aboard a vessel, or bring the vessel into a port. (Dkt. 15 at 12, 14-15)

The cases giving rise to forfeiture actions in rem pursuant to 33 U.S.C. §§ 383-85 involve capture of piratical vessels and their cargo and are distinguishable from the facts alleged in this case. Moreover, Plaintiff found Defendant TX 1 at least 170 years after pirates allegedly possessed Defendant TX 1. Considering the facts and circumstances of this case, including the lapse of time between the alleged pirates' possession of Defendant TX 1 and Plaintiff's salvage of Defendant TX 1, Plaintiff fails to sufficiently allege that Defendant TX 1 constitutes piratical cargo subject to forfeiture under 33 U.S.C. §§ 383-84.

Finally, Plaintiff asserts that actual or constructive possession or control of Defendants TX 3(1)-(3) is not required for in rem jurisdiction in forfeiture actions. However, as Plaintiff has not

---

[1] The Court found in the April 30, 2012 order that Defendant TX 1 was not subject to forfeiture under 33 U.S.C. §§ 383-85. The Court issued a warrant of arrest against Defendant TX 1 pursuant to Plaintiff's salvage claim only.

3

A52

captured Defendants TX(1)-(3),  Plaintiff fails to allege sufficient facts to support a forfeiture action in rem for piratical cargo.

Accordingly, and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     Plaintiff's Motions for Court to Reconsider its Partial Denial of Plaintiff's Motion for an Order Directing the Clerk to Issue a Warrant of Arrest In Rem to the U.S. Marshal, to Reconsider Court's Partial Denial of Plaintiff's Motion for Appointment of Substitute Custodian, to Alternatively Direct the Clerk to Issue Separate Warrants of Arrest, and to Hold Oral Argument in a Hearing in Camera on These Matters (Dkt. 15) is **DENIED**.

**DONE and ORDERED** in Tampa, Florida on this 18th day of May, 2012.

ELIZABETH A JENKINS
United States Magistrate Judge

4

A53

**TAB 29**

"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FRANCISCO MARTIN,**

      **Plaintiff,**

**v.**                                                           **Case No.  8:12-cv-656-T-30EAJ**

**ONE BRONZE ROD, et al.,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Francisco Martin's Objections, which he filed *pro se*, to an order issued by United States Magistrate Judge Elizabeth A. Jenkins (Dkt. 18). Specifically, the order Plaintiff objects to is the Magistrate Judge's denial of his motion to reconsider her partial denial of his motion for an order directing the clerk to issue a warrant of arrest in rem as to Defendants One Bronze Rod (TX 1) and TX 3(1)-(3).[1] Upon consideration of Plaintiff's Objections, and being otherwise advised of the premises, the Court concludes that the Objections should be overruled.

_____

[1] The Magistrate Judge concluded, in part, that the amended complaint alleged sufficient facts showing a maritime peril for Defendant TX 1, but failed to allege sufficient facts showing a maritime peril for, or success in salvaging, Defendants TX 3(1)-(3) (Dkt. 17). She also concluded that Plaintiff did not have actual or constructive possession of Defendants TX 3(1)-(3) and did not establish a forfeiture action in rem for piratical cargo. Thus, she granted Plaintiff's motion for a warrant of arrest in rem with respect to Defendant TX 1 and denied the motion with respect to Defendants TX 3(1)-(3).

A54

Case 8:12-cv-00656-JSM-EAJ   Document 29   Filed 01/28/13   Page 2 of 2 PageID 184

Under Rule 72(a) of the Federal Rules of Civil Procedure, a party may object to a nondispositive order entered by a magistrate judge, but in order to prevail, it must establish that the order is clearly erroneous or contrary to law. Upon consideration of the record in this case, the Court concludes that Plaintiff has not demonstrated clear error or a ruling that is contrary to law. Plaintiff quibbles with the Magistrate Judge's conclusions, but does not establish anything more than a difference of opinion. Under these circumstances, it would be inappropriate for the Court to vacate any portion of the Magistrate Judge's order.

It is therefore ORDERED AND ADJUDGED that:

1.     Plaintiff Francisco Martin's Objections (Dkt. 18) are OVERRULED and the Magistrate Judge's Order (Dkt. 17) is AFFIRMED.

**DONE** and **ORDERED** in Tampa, Florida on January 28, 2013.

**JAMES S. MOODY, JR.**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-656.objection18.frm

Page 2 of 2

A55

**TAB 30**

"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| FRANCISCO MARTIN | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | Case No: 8:12-CV-656-T-30EAJ |
| v. | : | |
| | : | |
| One Bronze Rod, | : | |
| One Chest (including its contents and associated artifacts), | : | |
| One Chest (including its contents and associated artifacts) and | : | |
| One Chest (including its contents and associated artifacts), | : | |
| | : | |
| Defendants | : | |
| *in rem* | : | |

## NOTICE OF INTERLOCUTORY APPEAL

Notice is hereby given that Francisco Martin, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the 11th Circuit from an order entered in this action on the 28th day of January, 2013 (Record Doc. No. 29) by the Hon. James S. Moody, Jr. overruling Plaintiff's objections (Record Doc. No. 18) to the Hon. Magistrate Judge Elizabeth A. Jenkins' order dated May 12, 2012 (Record Doc. No. 17) denying Plaintiff's motion to reconsider her order dated April 30, 2012 (Record Doc. No. 10) which denied, in part, Plaintiff's motion for an order directing the clerk to issue a warrant of arrest *in rem* as to Defendants One Bronze Rod (TX1) and Defendants TX 3(1-3).

139797.00601/7211517v.1

A56

Dated: New York, New York
      February 12, 2013

Respectfully submitted,

John D. Kimball, Esq.
Blank Rome LLP
405 Lexington Ave.
New York, NY 10174-0208
Telephone: 212-885-5259
Facsimile: 917-332-3730
Email: jkimball@blankrome.com

Attorneys for Plaintiff

2

139797.00601/7211517v.1

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2013, I filed the foregoing with the Clerk of the Court via the Court's ECF electronic filing system, which will send notice to all counsel of record.

Jeremy Alan Herschaft, Esq.
Blank Rome LLP
405 Lexington Ave.
New York, NY 10174-0208
Telephone: 212-885-5254
Facsimile: 917-332-3730
Email: jherschaft@blankrome.com

Attorneys for Plaintiff

3

139797.00601/7211517v.1

A58

**TAB 33**

"

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 13, 2013

Sheryl L. Loesch
U.S. District Court
801 N FLORIDA AVE
TAMPA, FL 33602-3849

Appeal Number:  13-10694-FF
Case Style:  Francisco Martin v. One Bronze Rod, et al
District Court Docket No:  8:12-cv-00656-JSM-EAJ

The enclosed copy of this Court's Order of Dismissal is issued as the mandate of this court. See
11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a
motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such
order. No additional time shall be allowed for mailing."

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Janet K. Spradlin, FF
Phone #: (404) 335-6178

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

A59

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 13-10694
Non-Argument Calendar

———————————————

D.C. Docket No. 8:12-cv-00656-JSM-EAJ

FRANCISCO MARTIN,

Plaintiff-Appellant,

versus

ONE BRONZE ROD,
ONE CHEST, including its contents and associated artifacts,
ONE CHEST, including its contents and associated artifacts,
ONE CHEST, including its contents and associated artifacts,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

Before CARNES, Chief Judge, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

A60

Francisco Martin filed this interlocutory appeal challenging the district court's denial of his motion seeking orders of *in rem* arrest of one bronze rod and three chests believed to be piratical cargo. Because this is an appeal from a nonfinal order of the district court, we dismiss for lack of jurisdiction.

"By statutory authority, this court has jurisdiction only of appeals from final decisions of the district courts." *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1530 (11th Cir. 1987), *aff'd sub nom. Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S. Ct. 987 (1989); *see Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945) (recognizing that a final decision "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"). Martin's argument that this order is immediately appealable pursuant to the collateral order doctrine fails because he cannot meet the "stringent requirements" of the doctrine. *See Osterneck*, 825 F.2d at 1531. Specifically, Martin has not shown how waiting to timely appeal the complete final judgment would effectively prevent review of the order in question. *Id.* ("No suggestion has been made, nor could one be, that the district court's order . . . would be unreviewable had [the party] awaited final judgment before taking its appeal. Consequently, the [collateral order] doctrine is inapplicable."). Unlike the cases cited by Martin, where appellate review was granted to review an order vacating a previous attachment or arrest of a vessel under the collateral order doctrine, the

2

A61

chests in question are not currently arrested and are immobile and hence not at risk of sailing out of the court's jurisdiction. *See Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684, 689, 70 S. Ct. 861, 865 (1950) ("Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible."); *The Pesaro*, 255 U.S. 216, 217-18, 41 S. Ct. 308, 308 (1921) ("The suit is in rem—is against the ship. The decree holds for naught the process under which the ship was arrested, declares she is not subject to any such process and directs her release—in other words, dismisses her without d[el]ay. Thus the decree ends the suit as effectually as if it formally dismissed the libel. Obviously, therefore, it is final."). Additionally, Martin cannot find relief in this court's appellate authority to review interlocutory admiralty matters under 28 U.S.C. § 1292(a)(3), which grants jurisdiction to courts of appeals over "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." Because of this court's strict construction of this statute, and based on the order's failure to resolve any claim on the merits, we refuse to grant jurisdiction under § 1292(a)(3). *See Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1323 (11th Cir. 1999); *see also Petroleos Mexicanos Refinacion v. M/T KING A (EX-TBILISI)*, 377 F.3d 329, 337 (3d Cir. 2004) ("[W]hether or not a vessel is subject to arrest says

nothing about the 'rights and liabilities' of the parties; it is merely a procedural

matter.").

Having found no valid grant of appellate jurisdiction, we dismiss the appeal.

DISMISSED.

4

A63

**TAB 36**

"

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FRANCISCO MARTIN,

     Plaintiff,

v.                                   Case No: 8:12-cv-656-T-30EAJ

ONE BRONZE ROD, ONE CHEST, ONE
CHEST and ONE CHEST,

     Defendants.

_____

## ORDER

     Before the Court is the Plaintiff's Status Report (Dkt. #35) filed in response to this Court's Order.  Upon review and consideration, it is

     **ORDERED** that:

     1.     The Clerk is directed to ADMINISTRATIVELY CLOSE this case without prejudice to Plaintiff to move to reopen the case if he receives a favourable ruling from the Eleventh Circuit.

     2.     Any pending motions are terminated as moot.

     **DONE** and **ORDERED** in Tampa, Florida, this 29th day of August, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2012\12-cv-656 admin close.docx

A64

**TAB 38**

"

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**FRANCISCO MARTIN,**

> **Plaintiff,**

**v.**                                    **Case No.  8:12-cv-656-T-30EAJ**

**ONE BRONZE ROD, et al.,**

> **Defendants.**

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff's Motion to Reopen Case (Dkt. 37).  Upon consideration of same, and being otherwise advised in the premises, the Court concludes that this case may be reopened for the sole purpose of permitting Plaintiff to seek a salvage or forfeiture award related to his seizure of Defendant One Bronze Rod (Defendant TX 1).[1]

This case had been closed during the pendency of Plaintiff's appeal of the Court's denial of the *in rem* arrests of Defendants TX 3(1) - (3).  On August 13, 2013, the Eleventh Circuit dismissed the appeal for lack of jurisdiction (Dkt. 33).  On August 19, 2013, the

---

[1]The Magistrate Judge concluded, in part, that Plaintiff's amended complaint alleged sufficient facts showing a maritime peril for Defendant TX 1, but failed to allege sufficient facts showing a maritime peril for, or success in salvaging, Defendants TX 3(1)-(3) (Dkt. 17).  She also concluded that Plaintiff did not have actual or constructive possession of Defendants TX 3(1)-(3) and did not establish a forfeiture action *in rem* for piratical cargo.  Thus, she granted Plaintiff's motion for a warrant of arrest *in rem* with respect to Defendant TX 1 and denied the motion with respect to Defendants TX 3(1)-(3).

Court directed Plaintiff to file a status report within eleven days (Dkt. 34).  On August 28, 2013, Plaintiff filed his status report, indicating that he had filed a motion for reconsideration with the Eleventh Circuit that was still pending (Dkt. 35).  The next day, the Court directed the Clerk to administratively close this case (Dkt. 36).  The Order states that Plaintiff may move to reopen his case if he receives a favorable ruling from the Eleventh Circuit regarding his appeal (Dkt. 36).

Plaintiff now contends that, although he did not receive a favorable ruling from the Eleventh Circuit, this case should be reopened because he is entitled to immediately seek a salvage or forfeiture award for his seizure of Defendant TX 1.  Plaintiff states that he filed a proof of publication with respect to the arrest of Defendant TX 1, that no party has filed a separate claim of ownership or entitlement to Defendant TX 1 in response, and the time to file a claim has expired.  Although it is perplexing that Plaintiff waited this long to seek further action with respect to Defendant TX 1 (given the May 2012 publication date), it makes the most sense to allow Plaintiff to seek full title to Defendant TX 1 in this action.

Plaintiff also summarily states that he is entitled to amend his complaint as against Defendants TX 3(1)-(3) "upon their eventual actual seizure."  (Dkt. 37).  This request is denied.  Plaintiff does not state any reason why the Court should permit this amendment at this late date.  Indeed, this case was filed in March 2012 and the Magistrate Judge's Order denying Plaintiff's warrant with respect to Defendants TX 3(1)-(3) was issued on April 30, 2012 (Dkt. 10).  Notably, the Magistrate's Order did not contemplate amendment.  And, rather than seek amendment, Plaintiff filed an interlocutory appeal to the Eleventh Circuit.

A66

Case 8:12-cv-00656-JSM-EAJ   Document 38   Filed 10/11/13   Page 3 of 3 PageID 214

In sum, Plaintiff does not explain why he waited nearly eighteen months to seek an amendment of his complaint with respect to these Defendants.

It is therefore ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion to Reopen Case (Dkt. 37) is granted solely for the purpose of allowing Plaintiff to seek further action as to Defendant TX 1; the motion is otherwise denied.

2.    The Clerk of Court is directed to reopen this case.

3.    Plaintiff shall file the appropriate motion to seek a salvage or forfeiture award with respect to Defendant TX 1 within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on October 11, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-656.mtreopen.frm

Page 3 of  3

A67

**TAB 40**

"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**IN ADMIRALTY**

**FRANCISCO MARTIN,**

       **Plaintiff,**

**vs.**                                                        **Case No.: 8:12-CV-656-T-30EAJ**

**ONE BRONZE ROD,**
**ONE CHEST,**
**(including its contents and associated artifacts),**
**ONE CHEST,**
**(including its contents and associated artifacts), and**
**ONE CHEST,**
**(including its contents and associated artifacts).**

       **Defendants** *in rem.*
_____/

## <u>REPORT AND RECOMMENDATION:</u>

Before the Court is Plaintiff Francisco Martin's ("Plaintiff's") **Plaintiff's Motion for Judgment on the Pleadings and Supporting Memorandum**. (Dkt. 39) This matter has been referred to the undersigned for consideration and issuance of a Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1)(B); Local Rules 6.01(b) and 6.01(c), M.D. Fla. For the reasons that follow, the Court recommends granting in part and denying in part Plaintiff's Motion for Judgment on the Pleadings (Dkt. 39).

## <u>Background</u>

On April 13, 2013, Plaintiff filed a Verified Amended Complaint In Admiralty <u>In Rem</u> (Dkt. 5) against Defendants One Bronze Rod ("Defendant TX 1"), One Chest, including its contents and associated artifacts, ("Defendant TX 3(1)"), One Chest, including its contents and associated

1

A68

artifacts, ("Defendant TX 3(2)"), and One Chest, including its contents and associated artifacts ("Defendant TX 3(3)").  Plaintiff also filed its Amended Motion for an Order Directing the Clerk to Issue a Warrant of Arrest In Rem to the U.S. Marshal (Dkt. 6), which this Court granted in part, directing the Clerk to issue a warrant of arrest <u>in rem</u> to the U.S. Marshal for Defendant TX 1. (Dkt. 10).

Now, in Plaintiff's Motion for Judgment on the Pleadings and Supporting Memorandum (Dkt. 39), Plaintiff seeks a declaratory judgment that Defendant TX 1 - a bronze rod - is subject to the United States and general maritime laws governing piracy, salvage, or finds; was property belonging to or taken by the Gasparilla Pirates who were operating a vessel fitted out or held for the purpose of committing piratical acts; and that no government, foreign, federal, state, or local, or any person had the authority to grant, condition, or deny the right of Plaintiff to search for and arrest Defendant TX 1, or to interfere with such search by Plaintiff.  Plaintiff also seeks this Court to condemn Defendant TX 1, direct the U.S. marshal to auction it, and to distribute the proceeds to Plaintiff and the United States in a fair and equitable manner pursuant to 33 U.S.C § 384 and the general maritime law governing piratical forfeitures; in the alternative, Plaintiff seeks this Court to award title to Defendant TX 1 as compensation for his salvage services.

<u>Discussion</u>

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Rule 12(c), Fed. R. Civ. P.  Judgement on the pleadings is appropriate where the moving party establishes that there are no material facts in dispute; the Court will "accept the facts in the complaint as true and . . . view them in the light most favorable to the non-moving party." <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140 F.3d 1367, 1370 (11th Cir. 1998).  <u>See also</u>

Underwriters at Lloyds v. FedEx Freight System, Inc., No. 8:07-CV-212-T-EAJ, 2008 WL 763800, at *3 (M.D. Fla. Mar. 19, 2008).

      Plaintiff seeks either title to or proceeds from the sale of Defendant TX 1 under 33 U.S.C § 384 and the general maritime law governing piratical forfeitures, the common law of finds, or the law of salvage.  Section 384 provides for the condemnation of a captured piratical vessel brought into any United States port.  However, the Court has already found that the Amended Complaint does not show a sufficient nexus to piratical cargo to support a warrant for arrest in rem. (Dkt. 10 at 5)  Neither do the factual allegations show a sufficient nexus to piratical cargo to support Plaintiff's motion for judgment on the pleadings under that theory.

      Under the common law doctrine of finds, the finder may acquire title to the property found, rather than a salvage award. JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts and Quartz Crystals, 922 F. Supp. 2d 1326, 1334 (S.D. Fla. 2013).  A finder must prove that the property in question is either unowned or abandoned. Id. (internal quotation marks and citation omitted).  However, the law of finds is generally disfavored over salvage rights. R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel, 435 F.3d 521, 532 (4th Cir. 2006) ("Titanic III")); Odyssey Marine Exploration, Inc. v. Unidentified, Wrecked, & Abandoned Sailing Vessel, 727 F. Supp. 2d 1341, 1344 (M.D. Fla. 2010).  A presumption exists "that owners do not give up title to ships and cargo in marine peril, even if cargo is swept overboard or a crew has to leave its vessel on the open water." Int'l Aircraft Recovery, LLC v. Unidentified, Wrecked, & Abandoned Aircraft, 218 F.3d 1255, 1258 (11th Cir. 2000)  In this case, the Court has already indicated that Plaintiff has not shown that Defendant TX 1 is unowned or abandoned. (Dkt. 10 at 6 n.5)

3

Although Plaintiff's motion cannot be granted either under Section 384 or the law of finds, the amended complaint does support the alternate claim of salvage. "Salvage is the compensation allowed to persons by whose assistance a ship or her cargo has been saved . . . from impending peril on the sea, or in recovering such property from actual loss." The Blackwall, 77 U.S. (10 Wall.) 1, 11 (1869). A salvage claim requires proof of three elements: first, proof of "a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance;" second, a voluntary act by the salvor, who was under no official duty or other legal duty to assist the owner; and third, success, full or partial, in saving, or in helping to save the property at risk. Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985) (citations omitted). See also The Sabine, 101 U.S. 384, 384 (1879).

To constitute marine peril, "[t]he property must be in danger, either presently or reasonably to be apprehended." Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330, 337 n.13 (5th Cir. 1978) ("Treasure Salvors I") (citations omitted). The danger required for salvage does not necessarily have to be imminent or absolute. Id. Indeed, "[m]arine peril includes more than the threat of storm, fire, or piracy to a vessel in navigation." Id. at 337. But "the threat must be something more than the inevitable deterioration that any vessel left untended would suffer." Faneuil Advisors, Inc. v. O/S Sea Hawk, 50 F.3d 88, 93 (1st Cir. 1995) (citation omitted). Salvage is "demandable of right for vessels saved from pirates, or from the enemy." Talbot v. Seeman, 5 U.S. (1 Cranch) 1, 28 (1801).

In this case, Plaintiff's Verified Amended Complaint alleges that "[a]pproximately 15% of Defendant TX 1 was buried in the bottom sediments of the river. The remaining portion of Defendant TX 1 was situated in the water column[,]" and that "Defendant TX 1 was partially buried

4

A71

in land beneath the tidal and navigable waters of the Peace River basin in DeSoto County, Florida."

(Dkt. 5 at 16-17)  In his motion for judgment on the pleadings, Plaintiff asserts that Defendant TX

1, a bronze rod, was in peril due both to the natural elements, such as corrosion or oxidation, and

to the risk of being struck by vessels. (Dkt. 39 at 14)  This is sufficient to satisfy the requirements

of marine peril.

      Satisfying the second and third elements, in February 2005, Plaintiff undertook to remove,

and successfully removed, the bronze rod from the soil and water column, then transferred a portion

of the rod to this Court for "symbolic arrest" of the rod in April 2012. (Dkts. 5 at 16-17, 8)  Pursuant

to this Court's April 30, 2012 Order directing issuance of a warrant of arrest  (Dkt. 10), the U.S.

Marshal took custody of TX 1 and surrendered it to the Clerk's office pending further order. (Dkt.

16)  Plaintiff satisfied the three requirements for a salvage claim by endeavoring to and successfully

removing Defendant TX 1 from marine peril.

      Regarding a remedy for their services, "[s]alvors, under the maritime law, have a lien upon

the property saved, which enables them to maintain a suit in rem against the ship or cargo, or both

where both are saved in whole or in part."  The Sabine, 101 U.S. at 386.  As a salvor, Plaintiff

properly undertook this suit in rem against Defendant TX 1.

      A salvage award is not merely payment in quantum meruit, but also a reward to induce

efforts to save life and property at sea. Id. at 384; The Blackwall, 77 U.S. at 14.  The salvage award

is calculated by consideration of the nature, value, and duration of the service rendered, as well as

the risk involved in rendering the salvage service. The Blackwall, 77 U.S. at 12, 14.  Salvors do not

generally gain title to the property salvaged. Int'l Aircraft Recovery, 218 F.3d at 1258 (citations

omitted).  However, in certain circumstances, "[s]alvage awards may include the entire derelict

5

property." <u>Treasure Salvors I</u>, 569 F.2d at 337.  <u>See also</u> <u>Odyssey</u>, 727 F. Supp. 2d at 1344 ("[I]f the salvage award exceeds the value of the salvaged property, the salvor receives title to the property."(citing 3A <u>Benedict on Admiralty</u> § 228)); <u>Brady v. The African Queen</u>, 179 F. Supp. 321, 324 (E.D. Va. 1960) (finding it unnecessary to decide between find or salvage, since the value of the service provided exceeded the value of the property; explaining that libellants "would, in any event, be entitled to receive the entire proceeds of any sale, less court costs and other outstanding claims.").

Here, in his efforts to salvage Defendant TX 1, Plaintiff alleges that he conducted extensive academic and field research and expended substantial money, time, and effort to locate, survey, photograph, and recover Defendant TX 1.  This research, effort, and recovery spanned the time between 2003 and 2005. (Dkt. 5 at 5, 16)  Plaintiff also alleges that he sustained injuries to his person and incurred risk to his health in this endeavor.  Considering the nature and duration of his undertakings and the service performed, along with the risk to Plaintiff by engaging in recovery of Defendant TX 1, it is appropriate to award Plaintiff title to Defendant TX 1.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)    Plaintiff's Motion for Judgment on the Pleadings and Supporting Memorandum (Dkt. 39) be **GRANTED in part** and **DENIED in part**:

(A)    Plaintiff's request for declaratory judgment be **GRANTED** to the extent that the Court declares that Defendant TX 1 is subject to the United States and maritime laws governing salvage;

(B)    Plaintiff's request to condemn Defendant TX 1, direct the U.S. marshal to auction it, and to distribute the proceeds to Plaintiff and

6

A73

the United States in a fair and equitable manner pursuant to 33 U.S.C

§ 384 and the general maritime law governing piratical forfeitures, be

**DENIED**;

(C)    Plaintiff's alternative request to award title to Defendant TX 1 as

compensation for Plaintiff's salvage services be **GRANTED**.

DATE: January 14, 2014

ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of this service shall bar an aggrieved party

from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

7

A74

**TAB 42**

"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FRANCISCO MARTIN,

      Plaintiff,

v.                               Case No: 8:12-cv-656-T-30EAJ

ONE BRONZE ROD, ONE CHEST, ONE
CHEST and ONE CHEST,

      Defendants.

_____

<u>**ORDER**</u>

    **THIS CAUSE** came on for consideration upon the Report and Recommendation submitted by Magistrate Judge Elizabeth A. Jenkins (Dkt. #40) and Plaintiff's Objections (Dkt. #41) filed thereto.

    After careful consideration of the Report and Recommendation of the Magistrate Judge, the Objections, and in conjunction with an independent examination of the file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

    **ACCORDINGLY**, it is therefore, **ORDERED AND ADJUDGED**:

    1.    The Report and Recommendation (Dkt. #40) of the Magistrate Judge is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review.

    2.    Plaintiff's Motion for Judgment on the Pleadings (Dkt. #39) is **GRANTED in part** and **DENIED in part**:

A75

(A)    Plaintiff's request for declaratory judgment is **GRANTED** to the extent that the Court declares that Defendant TX 1 is subject to the United States and maritime laws governing salvage;

(B)    Plaintiff's request to condemn Defendant TX 1, direct the U.S. Marshal to auction it, and to distribute the proceeds to Plaintiff and the United States in a fair and equitable manner pursuant to 33 U.S.C § 384 and the general maritime law governing piratical forfeitures, is **DENIED**; and

(C)    Plaintiff's alternative request to award title to Defendant TX 1 as compensation for Plaintiff's salvage services is **GRANTED**.

3.    **Plaintiff shall file a proposed final judgment consistent with the Court's ruling herein within fourteen (14) days of this Order.**

**DONE** and **ORDERED** in Tampa, Florida, this 30th day of January, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies Furnished To:
Counsel/Parties of Record

S:\Even\2012\12-cv-656 adopt 40.docx

2

A76

**TAB 43**

"

Case 8:12-cv-00656-JSM-EAJ   Document 43   Filed 02/11/14   Page 1 of 2 PageID 330

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCISCO MARTIN,
                              Plaintiff,                    CASE NO.: 8:12-CV-656-T-30EAJ
                  v.

One Bronze Rod,
One Chest (including
its contents and associated artifacts),
One Chest (including
its contents and associated artifacts) and
One Chest (including its contents and
associated artifacts),
                              Defendants *in rem*.

---

**FINAL JUDGMENT**

**THIS CAUSE** having come to be heard upon plaintiff Francisco Martin's filing of its

Amended Complaint dated April 13, 2012, (Dkt #5), asserting claims against *in rem* defendants

located within the Middle District of Florida consisting of one bronze rod (referred to during these

proceedings as Defendant TX 1) and three copper-lined chests and their contents (referred to as

Defendants TX 3(1)-(3)); and this Court having entered various orders granting plaintiff's

requested relief in part, denying it in part, and ordering plaintiff to file a proposed final judgment

consistent with its rulings;

    **ACCORDINGLY**, it is therefore **ADJUDGED**:

    1.  Plaintiff shall be, and hereby is, granted full title in Defendant TX 1 as its salvage award

        in respect of that property; and

    2.  Plaintiff's Amended Complaint shall be, and hereby is, in all other respects dismissed

        without costs to any party; and

A77

Case 8:12-cv-00656-JSM-EAJ   Document 43   Filed 02/11/14   Page 2 of 2 PageID 331

3.   Document S-1 and Exhibit 1 to Document S-5 filed in this matter under seal and maintained under seal pursuant to the Court's April 14, 2012 Order (Dkt #9) shall remain under seal; and

4.   The Clerk shall immediately turn over to Plaintiff any portion of Defendant TX 1 still in the Court's custody; and

5.   The Clerk is hereby directed to mark this case as closed.

DONE AND ORDERED at Tampa, Florida on this 11th day of February, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies Furnished to:</u>
Counsel/Parties of Record

S:\Even\2012\12-cv-656 final judgment.docx

A78

**TAB 44**

"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
IN ADMIRALTY

|  |  |  |
|---|---|---|
| FRANCISCO MARTIN | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Case No: 8:12-CV-656-T-30EAJ |
| v. | : |  |
|  | : |  |
| One Bronze Rod, | : |  |
| One Chest (including its contents and associated | : |  |
| artifacts), | : |  |
| One Chest (including its contents and associated | : |  |
| artifacts) and | : |  |
| One Chest (including its contents and associated | : |  |
| artifacts), | : |  |
|  | : |  |
| Defendants | : |  |
| *in rem* | : |  |

## NOTICE OF APPEAL

Notice is hereby given that Francisco Martin, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the 11th Circuit from Final Judgment entered in this action on the 11th day of February, 2014 (Record Doc. No. 43) by the Hon. James S. Moody, Jr.

A79

Dated: New York, New York
       February 19, 2014

Respectfully submitted,

John D. Kimball, Esq.
Blank Rome LLP
405 Lexington Ave.
New York, NY 10174-0208
Telephone: 212-885-5259
Facsimile: 917-332-3730
Email: jkimball@blankrome.com

Attorneys for Plaintiff

2

A80

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on February 19, 2014, I filed the foregoing with the Clerk of the Court via the Court's ECF electronic filing system, which will send notice to all counsel of record.


                                    */s/ John D. Kimball*
                                    John D. Kimball, Esq.
                                    Blank Rome LLP
                                    405 Lexington Ave.
                                    New York, NY 10174-0208
                                    Telephone: 212-885-5259
                                    Facsimile:  917-332-3730
                                    Email: jkimball@blankrome.com

                                    Attorneys for Plaintiff

139797.00601/7338935v.1

A81

**TAB CS**

"

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____
                                                              )
                                                              )
Francisco Martin v. One Bronze Rod, et al.    )        Appeal No. 14-10688
                                                              )
_____ )


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that Defendants have not appeared in either the action pending in the United States District Court for the Middle District of Florida (Case No. 8:12-cv-00656-JSM-EAJ) or the appeal pending before this Honorable Court (Appeal No. 14-10688). Accordingly, service of the attached pleadings is unnecessary.

On April 7, 2014 two (2) copies of the Appendix were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit through United States Postal Service by Express Mail, postage prepaid, for overnight delivery at the following address:

John Ley, Clerk
U.S. Court of Appeals for the 11th Circuit
56 Forsyth Street N.W.
Atlanta, Georgia 30303

I hereby certify that on the same date as above, a true and correct copy of the foregoing Appendix was electronically filed with the Clerk of the United States

Court of Appeals for the Eleventh Circuit by using the CM/ECF system.

Dated: New York, New York
      April 7, 2014

 

Respectfully Submitted,

/s/ John D. Kimball
John D. Kimball, Esq.
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174-0208
Telephone: 212-885-5259
Email: jkimball@blankrome.com

Attorney for Plaintiff-Appellant